457 A.2d 1291

**Teresa MILLSTEIN**

v.

**David M. MILLSTEIN, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 3, 1982.

Filed March 11, 1983.

496

Mindy M. Brook, Langhorne, for appellant.

Samuel M. Snipes, Yardley, for appellee.

Before SPAETH, ROWLEY and VAN der VOORT, JJ.

SPAETH, Judge:

This is an appeal from an order denying a petition to reduce a child support order and remit arrearages. Before the child support order was entered, appellant agreed, as part of a separation agreement, to pay child support of $120 per week. This agreement was then entered in the form of a child support order. In his petition to reduce, appellant pleaded that because of changed circumstances he could no longer afford to pay $120 per week. The lower court held that under *Brown v. Hall*, 495 Pa. 635, 435 A.2d 859 (1981), appellant was bound by the separation agreement. We affirm.

Appellant argues (1) that because his petition was to reduce a child support order, the lower court did not have subject matter jurisdiction to consider the separation agreement; and (2) that the separation agreement did not preclude him from proving changed circumstances, thereby fixing an amount beneath which his support obligation could not go.

On January 14, 1980, the parties entered into a separation agreement. By Article IX of the agreement appellant promised to pay $120 per week for the support of his daughter, "and the foregoing sum of $120.00 per week shall be entered in the form of a Court Order .... Said support shall continue so long as the child is living, unmarried and under the age of eighteen years or otherwise unemancipated." Article XXVIII provided that "each paragraph hereof shall be deemed to be a separate and undisputed covenant and agreement ...." Article XXV provided that "[n]o modification or waiver of this Agreement or of any part thereof shall be valid or effective unless in writing signed by the party sought to be charged therewith...." And Article II provided that "[t]his Agreement shall remain in full force and effect regardless of any change in the marital status of the parties. It is warranted, covenanted, and represented by 'HUSBAND' and 'WIFE,' each to the other, that this Agreement is lawful and enforceable and this warranty, covenant and representation is made for the

specific purpose of inducing 'HUSBAND' and 'WIFE' to execute the Agreement."

On January 28, 1980, the amount of $120 per week for child support was entered as a court order, as provided in the separation agreement. On June 30, 1980, the parties were divorced. Appellant paid the agreed amount of $120 per week for child support until September 1981. In November 1981 he filed a petition to reduce the support order of January 28, 1980, and to remit arrearages, alleging that on September 11, 1981, his employer had gone into bankruptcy and he had lost his job and was unable to pay the $120 per week child support. After a hearing on March 18, 1982, the lower court dismissed the petition to reduce and directed that the arrearages be remitted at the rate of $20 per week until paid in full. In the opinion accompanying its order the lower court found that appellant had lost his job and had gotten a new, lower-paying, job. However, the court made no findings on whether, if the parties had not entered into the separation agreement, appellant's change of circumstances would have entitled him to a reduction in his child support obligation. Instead, the court held that the issue was "whether [it had] the power to modify or alter Article IX" of the separation agreement, Slip op. at 5, and that under *Brown v. Hall, supra,* it did not.

1

In support of his argument that the lower court did not have subject matter jurisdiction to consider the separation agreement, appellant relies on *Guerin v. Guerin,* 296 Pa. Super. 400, 442 A.2d 1112 (1982). We have concluded, however, that *Guerin* is distinguishable. In explaining this conclusion, it will be convenient first to state *Brown v. Hall, supra,* and then return to *Guerin.*

In *Brown,* the facts were as follows. Early in 1972, Mrs. Hall instituted a support proceeding against her husband for herself and their two children. In July 1972 the lower court ordered Mr. Hall to pay $105 per week in support. In October 1973 the parties entered into a separation agreement in which Mr. Hall agreed to pay $105 per week

support for his wife and children, and upon the parties' divorce, $90 per week child support. In January 1974 the parties were divorced, and Mrs. Hall remarried and became Mrs. Brown. Mr. Hall began making the $90 payments; upon the parties' stipulation, the lower court modified its July 1972 support accordingly. Mr. Hall soon fell behind in his payments. After a contempt hearing and other proceedings, the lower court reduced its order to $65 per week child support. On appeal, this court affirmed, in October 1978, and the Supreme Court granted *allocatur.* Meanwhile, in December 1976, Mrs. Brown had commenced an action in equity seeking specific performance of the parties' October 1973 separation agreement. In July 1977 the chancellor ordered specific performance, holding that the separation agreement was binding on Mr. Hall and that the $90 per week child support he had promised to pay could not be reduced by later court order. Mr. Hall appealed the chancellor's decree to the Supreme Court, and the Court consolidated his appeal with Mrs. Brown's appeal from our order affirming the lower court's order reducing its support order to $65 per week.

First the Court considered Mr. Hall's appeal and affirmed the chancellor's decree. The Court reasoned:

We concur with the principle that parties to a divorce cannot restrict the court's power to modify a *support order* as facts, circumstances, and justice may require. But where, as here, a property settlement agreement has *not* been merged into the decree, the principle in no way affects the parties' continuing liability between themselves for separate *contractual* obligations .... The record here supports the finding that the parties intended the separation agreement to create *contractual* rights and obligations entirely independent of the *already existing* court order.

*Id.* 495 Pa. at 642, 435 A.2d at 862 (emphasis in original, footnote omitted).

Quoting the chancellor, the Court said:

A holding to the contrary would serve to illegitimize future separation agreements and encourage a party to

promise anything to obtain a divorce, knowing he will never be bound by it, even when the promise is in writing and for valid consideration. Needless to say, such a holding would also serve to shake the very foundation of contract law and the sanctity of a bargain made between parties dealing at arm's length.

*Id.*, 495 Pa. at 643–44, 435 A.2d at 863 (quoting *Brown v. Hall*, 27 Cumb.L.J. 340, 349–50 (1977)).

Next the Court considered Mrs. Brown's appeal from the reduced support order. Said the Court: "Because the independent separation agreement here provides for child support in an amount greater than the challenged support order," the challenged support order was vacated.

The decision in *Brown* is of considerable importance. Prior to *Brown* there was language in the cases that in a support proceeding, "[the court] was privileged to disregard the [separation] agreement although an order had been entered pursuant to it." *Commonwealth ex rel. Balph v. Balph*, 210 Pa.Super. 244, 248–49, 232 A.2d 76, 78 (1967). *And see Commonwealth ex rel. Snively v. Snively*, 206 Pa.Super. 278, 212 A.2d 905 (1965); *Commonwealth ex rel. Voltz v. Voltz*, 168 Pa.Super. 51, 76 A.2d 464 (1950). To be sure, when closely read, such cases did not stand for so broad a proposition. Thus, *Balph, Snively,* and *Voltz* each involved an *increase* in the amount of child support, not a *reduction.* Accurately stated, therefore, they stand only for the proposition that if a court finds that because of changed circumstances a child needs *more* support than the parent has agreed to pay, the parent may not preclude an order requiring him to pay more support by pleading a separation agreement providing for a smaller payment. However, the cases were not always accurately stated, and in *Brown*, Mr. Hall argued that the chancellor had erred in holding him bound by his promise in the separation agreement to pay $90 child support. In making his argument, he relied on the general proposition that in a support proceeding, the court could disregard a separation agreement between the parties. Since, he said, his circumstances had

changed—he had lost his original job—the chancellor should have disregarded the separation agreement and reduced his obligation to pay child support to accord with his new, lower-paying, job. Mr. Hall particularly relied on *Bria v. Bria,* 95 Dauph. 358 (1973), *aff'd per curiam,* 464 Pa. 247, 346 A.2d 542 (1975), where the chancellor had refused to grant specific performance of a provision in a separation agreement obligating the father to pay $43 per week child support on the ground that $31 per week, ordered by the support court, was adequate and appropriate. The importance of *Brown* is that it rejected this argument, distinguishing *Bria* and limiting it so closely to its particular facts that one must doubt whether it retains any precedential value. In *Bria,* the Court said, "the uncounseled husband thought he was required to sign the onerous agreement prepared by his wife's attorney in order to obtain a divorce," whereas in *Brown,* the agreement was not one-sided and both parties were represented by counsel. 495 Pa. at 643, 435 A.2d at 863. Furthermore, said the Court, in *Bria* the agreement was entered into before the support order, so that the chancellor "might have found that the wife was in effect repudiating [the agreement] by seeking the court's order of support," whereas in *Brown,* the agreement was entered into after the support order. *Id.* And finally, said the Court, in *Bria,* there was an issue of adequacy of support, whereas in *Brown,* "no one argues that $90 per week is *inadequate* to support the children." *Id.* (emphasis in original). With respect to this last proposition, the Court cited *Commonwealth ex rel. Rossi v. Rossi,* 161 Pa.Super. 86, 89, 53 A.2d 887, 888 (1947), quoting *Commonwealth ex rel. Snively v. Snively, supra,* as authority that a parent cannot "bargain away the right of [a] minor child to adequate support."

■ With *Brown* decided, therefore, the relationship between a child support order and a separation agreement providing for child support became clear. A separation agreement will not preclude a *court* from *increasing* a parent's child support obligation beyond the amount provid-

ed in the agreement. But the agreement may preclude a parent from *decreasing* his (or her) child support obligation to an amount less than the amount provided in the agreement.

We may now return to *Guerin v. Guerin, supra,* where the facts were as follows. In July 1974 a child support order was entered, with the agreement of the parties, providing that Mr. Guerin should pay support of $160 per week. In November 1974 the parties were divorced. In December 1974 they entered into an agreement providing · that Mr. Guerin should pay child support of $160 per week. In February 1975 Mr. Guerin filed a petition to reduce the support order of July 1974, alleging changed circumstances, and in response, the lower court reduced the order to $125 per week. Mrs. Guerin did not appeal this action but instead brought an action in assumpsit to enforce the December 1974 agreement for $160 per week. The lower court granted Mr. Guerin's motion for nonsuit and dismissed the action, and Mrs. Guerin appealed to this court. Holding that the case was "essentially similar" to *Brown v. Hall, supra,* we reversed, ordered the nonsuit removed, and remanded for further proceedings. *Id.* 296 Pa.Super. at 403, 442 A.2d at 1113.

*Guerin* thus supports not appellant but appellee. For in *Guerin* we held, relying on *Brown,* that the father could not escape his promise to pay an agreed amount of child support by proving a change in circumstances. *Brown,* we said, "compels the conclusion that the private support agreement here is enforceable." *Id.,* 296 Pa.Superior at 403, 442 A.2d at 1113. Similarly, the lower court here held that appellant could not escape his promise to pay an agreed amount of child support. However, in the course of reaching our decision in *Guerin,* we made a remark that appellant has fastened upon as authority for his argument that the lower court did not have subject matter jurisdiction to consider the separation agreement containing his promise to pay an agreed amount of child support.

As we have mentioned, Mrs. Guerin did not appeal the order reducing Mr. Guerin's support obligation, instead suing Mr. Guerin in assumpsit on his agreement. The question therefore arose whether the unappealed order reducing support was res judicata in the assumpsit action. We said that "[the] order lowering court-ordered support was not res judicata of the issue of enforceability of the private agreement, because that issue could not be raised before Judge ROSENBERG [the judge who had entered the order reducing support]." *Id.*, 296 Pa.Superior at 403, 442 A.2d 1113. On the strength of this statement, appellant argues that here appellee could not raise before Judge MIMS, sitting in the support court, the fact that he had entered into a separation agreement, in other words, that appellee could not plead before Judge MIMS that she should not reduce the child support order of $120 per week because in the separation agreement appellant had promised to pay that amount. This argument has no merit.

In the first place, appellant's argument overlooks the state of the law as it was when Mr. and Mrs. Guerin were involved in their litigation. When the lower court in *Guerin* dismissed Mrs. Guerin's action in assumpsit to enforce Mr. Guerin's agreement to pay child support of $150 per week, it relied on "the proposition that a court may refuse to enforce a private support agreement if a party has a change of circumstances resulting from factors beyond his control." *Id.*, 296 Pa.Superior at 402, 442 A.2d 1113. Accordingly, the lower court reasoned, Judge ROSENBERG was empowered to reduce Mr. Guerin's support obligation to $125 per week, despite his agreement to pay $160 per week. As authority for this conclusion, the lower court relied upon *Bria v. Bria, supra; Commonwealth ex rel. Balph v. Balph, supra;* and *Commonwealth ex rel. Snively v. Snively, supra.* Since *Brown v. Hall, supra,* we know that the lower court was in error: As we have discussed, *Bria, Balph,* and *Snively* do *not* stand for the broad proposition that a support court is free to disregard a separation agreement and, on proof of a change in circum-

stances, order a reduction in a parent's support obligation to an amount smaller than the parent has promised in the separation agreement to pay. However, when Mrs. Guerin was before the support court, *Brown* had not been decided. Our statement that "that issue could not be raised before Judge ROSENBERG [the judge in the support court]" must be read in light of that fact. It only says that since *Brown* had not been decided, Mrs. Guerin could not plead *Brown* when she was in the support court. It is therefore no authority for appellant's argument that when appellee was in the support court, she could not plead *Brown*.

In the second place, to accept appellant's argument would lead to an absurd result. *Brown* has established that appellant's promise in the separation agreement to pay child support of $120 per week is enforceable. It would make no sense to hold that Judge MIMS, sitting in the support court, should act as though *Brown* were not the law, in other words, that she should order a reduction in appellant's support obligation because of appellant's changed circumstances, despite the fact that appellee could then bring an action, either in assumpsit or for specific performance, on the separation agreement and have the reduction order vacated. Nothing in *Guerin* suggests that litigants and the lower courts are obliged to proceed in so circuitous, and therefore so slow and expensive, a manner.

Appellant also relies upon *Commonwealth ex rel. Roviello v. Roviello*, 229 Pa.Super. 428, 323 A.2d 766 (1974), in support of his argument that the lower court did not have subject matter jurisdiction to consider the separation agreement. The proceeding in *Roviello* was in contempt. When Mr. and Mrs. Roviello appeared before the lower court on Mrs. Roviello's action for support, the court attempted to reach an amicable settlement. The parties then, at the hearing, agreed upon a property settlement, which was reduced to writing, and the court included the terms of the settlement agreement in its order of support. One of these terms was that Mr. Roviello would convey certain property to Mrs. Roviello. When he refused to convey the property,

the lower court held him in contempt of its order. Reversing, we said that "[t]his court has often noted that a proceeding for support cannot be used for the purpose of securing a wife's share of her husband's estate or for the purpose of recovering property to which she might otherwise be entitled." *Id.*, 229 Pa.Superior at 436, 323 A.2d at 771. Also, we said, "[W]e are not concerned with the validity of the written [settlement] agreement between the parties. The proper determination of the status of this document is in an action for specific performance before a court of equity." *Id.*, 229 Pa.Superior at 434, 323 A.2d at 770 (footnote omitted).

■ This language is not to be interpreted, as appellant suggests, to mean that a support court lacks subject matter jurisdiction to consider the terms of a private support agreement. By petitioning the lower court for an adjudication of contempt, Mrs. Roviello asked the court to rule on the strength of its order, *not* on the basis of the parties' agreement. The difficulty was that the order directed, not the payment of support, which would have been an order appropriate to the support court, but the conveyance of marital property, which was not appropriate. *Roviello* thus presents no obstacle to our conclusion that where, as here, one of the parties *does* ask the court to act on the basis of a private agreement, and the provision of the agreement relied upon *does* require the payment of support, the support court may consider the agreement in reaching its decision.

We are especially persuaded to this conclusion by *Brown v. Hall, supra,* where, as we have discussed, the Supreme Court consolidated a support action with an action upon a private agreement, and, having held the agreement enforceable, vacated the order entered in the support action. The course that litigation follows will depend upon choices made by the parties. It may happen that the party who has been promised support in a separation agreement may bring an action for specific enforcement of the agreement. *Brown v. Hall, supra; Guerin v. Guerin, supra; Commonwealth*

*ex rel. Roviello v. Roviello, supra.* But it may also happen that the party obligated to pay the support will take the initiative by filing a petition to reduce and remit arrearages. Nothing should turn on which party acts first. The party obligated by the separation agreement to pay support should not be permitted to avoid the principle established in *Brown v. Hall, supra*—in other words, should not be permitted to escape his support obligation as provided in the separation agreement—by beating the other party "to the punch," and filing a petition to reduce and remit before the party owed support files an action for specific performance.

2

Appellant next argues that in any case, the lower court "erred in its interpretation of *Brown v. Hall* and its application of *Brown* to the facts of this case." Brief for Appellant at 15. In particular, appellant argues that the separation agreement entered into by him and appellee is distinguishable from the agreement specifically enforced in *Brown* in that it was entered into before a support order was entered and therefore "merged" into the support order and ceased to be an independent source of obligation.

We agree that *Brown* does imply that a separation agreement that has merged into an order will not be given effect. *Id.* 495 Pa. at 642, 435 A.2d at 862 ("[W]here ... a property settlement agreement has *not* been merged into the [divorce] decree, the principle in no way affects the parties' continuing liability between themselves for separate *contractual* obligations." (Emphasis in original.) We are satisfied, however, that here the parties' separation agreement did not merge into the support order, and that it therefore continued to be an independent source of obligation.

It is true that Article IX of the separation agreement contemplated that appellant's child support obligation, as provided in the agreement, would be entered in the form of a court order. It does not follow, however, that once the order was entered, the separation agreement merged into it. Whether merger occurred depended upon the parties' in-

tent, and here it is clear that the parties' intent was that merger should not occur. Under the separation agreement, appellant's obligation to pay child support is a "separate and independent covenant," Article XXVIII, which can be modified only with appellee's written agreement, Article XXV, and which is to "remain in full force and effect regardless of any change in the marital status of the parties," Article II.

■ We therefore conclude that the lower court did not err in its interpretation and application of *Brown v. Hall, supra.* To the contrary, in every important respect we find *Brown* indistinguishable from this case. As in *Brown,* the separation agreement here is a detailed agreement "covering all aspects of the economic relationships of the parties." *Id.,* 495 Pa. at 643, 435 A.2d at 863. Also as in *Brown,* there is no suggestion that the separation agreement is one-sided, or that in entering into it, appellant was uncounseled, or that the $120 per week in child support provided in the separation agreement is inadequate. The lower court therefore correctly held that appellant could not, by filing a petition to reduce support and remit arrearages, escape his obligation under the separation agreement.

Affirmed.