**Repsher v. Repsher**

*John P. Karoly, Jr.,* for plaintiff.
*Thomas R. Elliot,* for defendant.

DAVISON, *J.,* May 18, 1984—We have before us both parties' motions for summary judgment in this action where plaintiff father seeks to effectively extricate himself from supporting his children. For the reasons set forth herein, we find that the subject property settlement agreement as it relates to support, violates public policy and, accordingly, we dismiss the father's motion and grant that of defendant mother.

The facts are as follows: the parties were married to each other on September 10, 1966; two children, Michael Gary, who will be 15 in May of this year, and Ryan, 11, were born of the marriage. In early 1973, the parties agreed to terminate the marriage. In an effort to minimize legal expenses relating thereto, the parties agreed to utilize but one attorney to draft a property settlement agreement. They chose Joel Ziev, Esq. a high school classmate of the mother and a recently admitted member of the bar.

The agreement prepared by Attorney Ziev and signed by both parties stated, in pertinent part:

"THIRD: Husband and Wife agree that Husband's responsibility for support of the two children will be in the amount of One Hundred Thirty ($130.00) Dollars per month until such time as the children become emancipated, attain their majority, or until the Wife remarries."

The property settlement agreement did not merge into the divorce decree.

The parties were divorced on May 1, 1974. At some point in time, the father voluntarily increased his payments to $140 monthly. The mother remarried on July 11, 1975. The father continued to make support payments and, in fact, increased the monthly payments to $170.

Thereafter, in 1982, the mother instituted a support action in Northampton County to obtain an increase. The action was transferred to Lehigh County where on May 7, 1982, the father was ordered to pay $400 monthly by our colleague, The Honorable James N. Dieffenderfer, following the recommendation of the Lehigh County Domestic Relations Office. Our colleague, the Honorable James Knoll Gardner, reviewed the order de novo and on June 11, 1982, ordered payment in the same amount. After the father's efforts for modification were denied, he was adjudged in contempt December 16, 1982, for failure to comply with the support order. On October 20, 1982, he filed this action, alleging that the mother's attempts to obtain child support constitute a breach of the property settlement agreement.

In our April 25, 1983 order dismissing the mother's preliminary objections, we observed that the issues raised at that point "may more appropriately be raised in a motion for summary judgment." Repsher v. Repsher, 40 Leh. L.J. 257, 259 (1983), and so they have been.

Defendant mother's motion is based on three grounds: (1) The agreement, as interpreted by the father, violates public policy, (2) The father waived the provisions by continuing to make voluntary support payments, and (3) The agreement was an uncounseled, non-arm's-length transaction. The fa-

ther's motion contends that there is no dispute that her actions constituted a breach. In view of our holding that the agreement violates public policy, we need not and do not reach the remaining contentions.

In any motion for summary judgment:

The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Pa. R.C.P. 1035(b). In interpreting this rule, it is well established that:

"The Court must consider both the record actually presented and the record potentially possible at the time of trial. . . . A hearing on a motion for summary judgment is not a trial on the merits, and the Court on such motion should not attempt to resolve conflicting contentions of fact. . . . The court is to accept as true all well pleaded facts in the plaintiff's pleadings, as well as the admissions on file, giving to the plaintiff the benefit of all reasonable inferences to be drawn therefrom. . . . The record must be examined in the light most favorable to the nonmoving party. . . . In passing upon a motion for summary judgment it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried. All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment. . . ."

Christman v. Dravo Corporation, 319 Pa. Super. 378, 460 A.2d 209, 288 (1983). In analyzing defendant's motion for summary judgment, we are obliged and do examine the support agreement in the most favorable light to the father; that is, we

must assume that any contractual obligation to support the children ceased upon the mother's remarriage and that her efforts to seek support constitute a breach.

We begin with the proposition that a parent cannot contractually waive a child's right to adequate support, and that support agreements that attempt to bargain away such a right may be disregarded. Brown v. Hall, 495 Pa. 635, 643 n. 11, 435 A.2d 859, 863 n. 11 (1981)*, Millstein v. Millstein, 311 Pa. Super. 495, 457 A.2d 1291, 1293-94 (1983). Judge Spaeth in Millstein specifically held that "A separation agreement will not preclude *a court* from *increasing* a parent's child support obligation beyond the amount provided in the agreement." Id. at 501, 502, 457 A.2d at 1294. (Emphasis in the original.) The father contends that in accepting the benefits of the property settlement generally, the mother agreed to forbear from exercising the right to seek such an award.

While there are no hard and fast definitions of what constitutes "public policy", Gordon v. Cutler, ____ Pa. Super. ____, 471 A.2d 449 (1983), the language of our Supreme Court on the subject 90 years ago retains viability applicable today:

Public policy, in the administration of the law by the courts, is essentially different from what may be public policy in the view of the legislature. With the legislature, it may be, and often is, nothing more than expediency. The public policy which dictates

---

*Justice Kaufman emphasized in Brown v. Hall that the parties there were represented by independent counsel in arms-length bargaining culminating in a property settlement agreement after a support order for valuable consideration. Here, the mother seemingly left the marriage with but the bare necessities and considerably less than the father who, incidentally, sold the marital home which he received in the property settlement agreement for $21,000.

the enactment of a law is determined by the wisdom of the legislature. . . . If, by well settled judicial precedent, the law has determined that such a contract as this tends to the injury of the public, or is inconsistent with sound morality, we would feel bound to follow the law thus declared, without regard to our own notions of the tendency of the contract. Enders v. Enders, 164 Pa. 266, 271, 30 A. 129-30 (1894).

When a contract is deemed to be violative of public policy:

"[I]t cannot, under any circumstances, be made the basis of a cause of action. The law when appealed to will have nothing to do with it, but will leave the parties just in the condition in which it finds them. If they have fully executed their unlawful contract, the law will not disturb them in the possession of what each has acquired under it. If one has executed in whole or in part, the law turns a deaf ear when he pleads for its aid to compel the other to do as much. * * * If the contract is still executory, the promisor is left undistributed in the possession of the money or other property which he agreed to pay or transfer; if the contract has been executed, the promisee is left undisturbed in the possession of the money or other property which has been paid or conveyed to him." City of Pittsburgh v. Goshorn, 230 Pa. 212, 227, 79 A. 505, 510; see also New York & Pennsylvania Co. v. Cunard Coal Co., 286 Pa. 72, 81, 82, 132 A. 828, 821; 12 Am. Jur. 725, §213. Dippel v. Brunozzi, 365 Pa. 264, 267-68, 74 A.2d 112, 114 (1950) as quoted in Gorden, supra at ____, 471, A.2d at 459 n. 3.

To adopt the father's argument and enforce the support agreement in the manner sought, would, in effect, enable him to accomplish by a back-door, circutious route that which he would not be

permitted to do directly, namely, a de facto evisceration of the validly entered support order. Although we are not sitting as a support court, we cannot "act as though Brown [v. Hall] were not the law," Millstein at 504, 457 A.2d at 1295, and we will not ignore Brown's intent. See id. at \_\_\_\_, 457 A.2d at 1295. Nor will we countenance an absurd result.

The father further contends that since the support payments are for the benefit of the children, unlike the money that would be awarded to him were he ultimately to prevail in this proceeding, the payments designated as child support would not be reduced. Such logic, however technically correct it may be, misses the point. To effectuate such a provision would discourage the mother from seeking adequate child support since the penalty for seeking such support would be a corresponding grevious loss in her own income.

A closely analogous situation appears in Lang v. Beishline, 56 D.&C. 2d 633 (1972), in which parents brought an action on behalf of their child, the minor plaintiff, for personal injuries. Defendant pleaded a settlement by which the parents agreed to indemnify defendant for any further claims by the child. What the court said there applies with equal force in the case at bar:

"It is the public policy of this State to protect the property right of minors against encroachments from all sources, including the minors' parents. The legislature has seen fit to implement this policy by provision for court approval of compromise settlements and for court control over the assets in minors' estates. The consideration recited in the release and indemnification covenant in the instant case is payable to the minor and his parents without limitation as to its ultimate disposition. There is no allocation of the fund between parents and child

and even if there were, there is no provision for protection of the minor's share for his benefit.

"The effect is not only to circumvent court approval, but also to dissuade the parents from their duty to promote their child's rights by suit if need be. The knowledge by parent and child that the parent has incurred a liability for payment of any verdict which the child may obtain will result in most instances in abandonment of those rights. We have found no Pennsylvania decisions on this question, but in the three States wherein it has arisen, the courts have uniformly ruled that such indemnity provisions contravene public policy: Valdimer v. Mt. Vernon Hebrew Camps, 210 N.Y.S. 2d 520 (N.Y., 1961, Ohio Casualty Insurance Company v. Mallison, 354 P.2d 800 (Ore., 1960); Loesch v. Vassilliades, 17 N.J. Super. 306, 86 A.2d 14 (1952). In the Loesch case, supra, the Superior Court of New Jersey said, at page 16:

'If such an agreement could be enforced, it would be for the benefit of the father to prevent the bringing of any suit on the claim of the infant, no matter how advantageous such suit might be for the infant. Therefore, the insurance company induced him to enter into a contract in which his personal interest came, or might come, into conflict with his duty to his daughter. It is clearly void as against public policy because it is an agreement, the object or necessary tendency of which is to place a person owing a duty to a third person, in a position where he is under obligations inconsistent with such duties. Such an agreement is void, even though in fact it has no such bad effect. 12 Am. Jur., Contracts §179; cf. Restatement, Contracts, §570 (1932); 6 Williston on Contracts, §1750 (1983).' " Id. at 636. Similarly, we conclude that the terms of the subject agreement, exonerating a parent from fulfilling the para-

mount duty of support must be considered void as a matter of law.

For all of these reasons, we are obliged to grant defendant's motion and deny plaintiff's motion for summary judgment.

## ORDER

Now, May 18, 1984, after argument, upon consideration of the briefs of counsel, and for the reasons set forth in the accompanying opinion.

It is ordered that defendant's motion for summary judgment be and the same is hereby granted,

It is further ordered that plaintiff's motion for summary judgment be and the same is hereby denied and dismissed.