## Wentzel v. Wentzel

*James Ronca,* for plaintiff.
*J. Michael Eakin,* for defendant.

BAYLEY, *J.*, February 13, 1985—The parties are former husband and wife having been divorced by a final decree in divorce entered in this court on December 13, 1982. The parties had entered into a written "property agreement" dated October 4, 1981. This agreement was later supplemented with a release dated October 15, 1981, signed by Susan Wentzel, of any claims, demands, liabilities and accounts receivable pertaining to a pharmaceutical business known as Professional Pharmacy and G/H Systems of Pa., Inc., a Pennsylvania corporation. A written addendum to the agreement was also signed by the parties on November 18, 1981.

On December 13, 1982, the day the divorce decree was signed, counsel for Mrs. Wentzel presented a petition to the court stylized "Order adopting property agreement." This petition contained the

signed documents referred to above. The court entered the following order:

"And now, this 13th day of December, 1982, . . . upon consideration of the *attached* Property Agreement and upon motion of Timothy A. Shollenberger, Esquire, attorney for Plaintiff, the attached Property Agreement *dated Oct. 4, 1981, with addendum dated Nov. 18, 1981,* executed by the parties is hereby approved as an Order of this Court and the parties are directed to comply therewith.[1]

By the Court,
/s/ Dale F. Shughart _____
P.J."

At the time the parties entered into their separation agreement, William Wentzel, who has been a registered pharmacist since 1963, operated a pharmacy and had an interest in a corporation known as G/H Systems, Inc. This corporation sold computers to pharmacies. Following the divorce Mr. Wentzel opened a second retail pharmacy. His earnings from G/H Systems, Inc. have gradually decreased to nominal amounts as competition has made obsolete the type of computer systems which were being sold to pharmacies.

In 1983, Mr. Wentzel incorporated his two pharmacies and he and his new wife own 50 percent of this corporation. She also is a registered pharmacist who participates equally in his business.

The property settlement agreement of October 4, 1981, and its addendum, constituted a comprehen-

---

1. The words underlined in the above quote were added to the proposed order by then President Judge Dale F. Shughart, when he signed it. Furthermore where the word "approved" appears in the order the judge crossed out the word used in the proposed order submitted by plaintiff's counsel, which was "adopted."

sive settlement between the parties. It included the following:

1. A distribution of personal property.

2. A transfer to wife of the marital home with the wife assuming responsibility for the payment of the mortgage.

3. A transfer to husband of a jointly owned business property with husband assuming responsibility for the payment of the mortgage.

4. The following alimony provision:

"13. *Alimony*: Husband shall pay to the Wife the sum of $750 every Thursday per week until such time as the Wife remarries. Remarriage as used in this Agreement, means a marriage which is legally recognized as such under the laws of the place of its making. For the purposes of this Agreement, cohabitation with another person does not constitute remarriage or otherwise and Husband's duty under this paragraph. This paragraph shall be construed so that the Husband shall be entitled to a deduction for income tax purposes in accordance with §71 of the Internal Revenue Code and that the Wife shall be entitled to personal exemptions for herself and the children. *It is specifically understood and agreed that said payments are to continue regardless of the level of Wife's earnings. Husband shall not commence any action to reduce the amount of the payments provided in this paragraph for any reason except death or remarriage of the Wife.*" (Emphasis added.)

5. A requirement that husband would provide medical insurance coverage for the wife until she should remarry.

6. Payment to the wife of $50,000 over a period of time, the last payment of which was due by December 1, 1984.

The parties have two minor children and they remain in custody of the wife with a visitation arrangement provided for the father. The property settlement agreement obligated the father to pay for each child's post high school, college or similiar type of education. The agreement also required the father provide medical insurance for the children but stylized the child support solely in terms of providing and maintaining certain types of insurance benefits for the children. Thus, the agreement placed the continuing financial obligation for support payments solely into the $750 per week alimony payment which is tax deductible to the father.

The agreement contains the following paragraph:

"Should a divorce action be commenced by either of the parties, the moving party shall request the court to incorporate this into any Divorce Decree. If this Agreement is incorporated into a divorce decree the parties shall have the right to enforce this Agreement under the Divorce Code of 1980 in addition to any remedies in law or equity and these enforcement rights are not waived or released by any of the provisions of this Agreement. The fact that a party brings an action to enforce the property agreement as incorporated in the divorce decree, under the Divorce Code of 1980 does not give either party the right to raise other claims under the Divorce Code, specifically waived and released by this paragraph and all rights and obligations of the parties arising out of the marriage shall be determined by this Agreement."

On July 8, 1982, on the divorce docket of 2193 Civil 1981, both parties signed an agreement for order of support in the Cumberland County Domestic Relations Office. On July 9, 1982, Judge Shughart entered an order pursuant to this agreement of support requiring Mr. Wentzel to pay through the Do-

mestic Relations Office of Cumberland County the sum of $750 per week alimony for the support of Susan M. Wentzel. As per the agreement the order also provided that defendant was to maintain Blue Cross and Blue Shield insurance coverage or its equivalent "on the children."

Defendant has fallen into substantial arrearages for the payment of his alimony obligation. On December 10, 1984, pursuant to a petition by plaintiff to enforce the payment of alimony at 2193 Civil 1981, this court entered a rule against William Wentzel to show cause why the relief requested in the petition should not be granted. The relief requested is:

"Wherefore, the Plaintiff respectfully requests this Court find that the Defendant William Terry Wentzel is in arrears in the payment of alimony and requests this Court enter an Order to effect the payment of the arrearages using such remedies as are set forth in §503 of the Divorce Code, in particular, a finding that the Defendant is in contempt of the Order of this Court. Plaintiff further requests the Court to make a finding that Defendant has breached the Agreement and pursuant to its power as set forth in §301 of the Divorce Code of 1980, plus the Court order the Defendant to pay all legal fees and costs incurred by the Plaintiff in this enforcement action."

The rule was made returnable and a hearing was held on January 3, 1985, with a follow up hearing on February 4, 1985. Defendant has through the Domestic Relations Office sought a reduction in the court order entered on July 9, 1982. The hearings before the court consolidated the proceedings instituted in the domestic relations office and the petition for enforcement brought by plaintiff on the divorce docket.

In both cases defendant maintains that evidence of changed financial circumstances supports a reduction in alimony payments and further maintains that it is within the court's authority to order a reduction. Since plaintiff maintains that the court is without authority to order a reduction we have had this issue briefed and will decide it now.

## DISCUSSION

The interpretation of written documents is a matter of law for the court. Onofrey v. Wolliver, 351 Pa. 18, 40 A.2d 35 (1944). We initially find that the parties expressly entered into a financial agreement which included an alimony provision which they intended would survive any divorce. The agreement between them is clear and unequivocal. That agreement provided that even if it was incorporated into a divorce decree the parties would have a right to separately enforce its provisions pursuant to the rights and remedies afforded at either law or equity.

Even though the parties had two minor children, all of the financial support provisions, other than lump sum payments, were placed into the alimony provision of paragraph 13. This enabled the husband to claim all support payments as a federal income tax deduction but also enabled the wife to claim the children as personal exemptions on her federal income tax returns. The language indicating that the parties intended that the payments were to remain constant and unchanging, subject only to two contingencies, is unequivocal: "it is specifically understood and agreed that said payments are to continue regardless of the level of wife's earnings. Husband shall not commence any action to reduce the amount of the payments provided in this paragraph for any reason except death or remarriage of the wife."

Accordingly, except for the contingencies of death or remarriage the parties intended that the alimony payments would remain constant and would be enforceable at law and in equity besides any other remedies available. Since a separate order was entered in the domestic relations office one of those other remedies was to be through the enforcement procedure available at that office. Additionally the parties provided that the agreement be incorporated into any final divorce decree so that it would be enforceable under the provisions of the Divorce Code. It is aboslutely clear that the parties did not intend that their agreement merge into a later divorce decree that would allow a court to alter the terms of their carefully constructed agreement.

In Brown v. Hall, 495 Pa. 635, 435 A.2d 859 (1981), a husband and wife entered into a written separation agreement providing for $100 per week to be paid until a divorce was concluded and thereafter $90 per week would be paid in child support. When the husband fell in arrears on the $90 per week agreement, Mrs. Brown (then Mrs. Hall), filed an equity action to enforce the terms of the separation agreement. After the chancellor found that the parties had not intended the property settlement to be merged into a subsequent decree in divorce, he ordered that the obligations created by the agreement were enforceable by a decree of specific performance. The Supreme Court agreed, noting that the chancellor specifically found that the parties intended to contract for a permanent amount of child support after the divorce which would not be subject to future court ordered reductions even upon a change of income status.

In the Brown case, the lower court had entered a $90 per week order for child support. Following the parties divorce a stipulation had been filed with the

support court mirroring the $90 per week agreement. In the equity case the Supreme Court upheld enforcement of the fixed payment of support. In a concurrent appeal it reversed the lower court order reducing the support on the case docketed in the domestic relations office — holding that because the settlement agreement provided for more child support than the court's order, the trial court's order lowering the statutory support award must be vacated.[2]

In Millstein v. Millstein, 311 Pa. Super. 495, 457 A.2d 1291 (1983), a father appealed an order denying a petition to reduce child support and remit arrearages. Before the child support order was entered, he had agreed, as part of a separation agreement, to pay child support at the rate of $120 per week. His petition to reduce pleaded that because of changed circumstances, he could no longer afford to pay $120 per week.

The Superior Court cited Brown v. Hall, supra, which noted:

"We concur with the principle that parties to a divorce cannot restrict the court's power to modify a support order as facts, circumstances, and justice may require. But where, as here, a property settlement agreement has not been merged into the decree, the principle in no way affects the parties' continuing liability between themselves for separate contractual obligations . . . The record here supports the finding that the parties intended the separation

---

2. It does not, however, work both ways. The court noted that a court, in a child support case, may disregard a support agreement if it does not provide adequate support for minor children. Citing Commonwealth ex rel. Rossi v. Rossi, 161 Pa. Super. 86, 53 A.2d 887 (1947); and Commonwealth ex rel. Snively v. Snively, 206 Pa. Super. 278, 212 A.2d 905 (1965).

agreement to create contractual rights and obligations entirely independent of the already existing court order." Id. 495 Pa. at 642, 435 A.2d at 862. (Emphasis in original, footnote omitted.)

Quoting the chancellor, the court said:

"A holding to the contrary would serve to illegitimize future separation agreements and encourage a party to promise anything to obtain a divorce, knowing he will never be bound by it even when the promise is in writing and for valid consideration. Needless to say, such a holding would also serve to shake the very foundation of contract law and the sanctity of a bargain made between parties dealing at arm's length." Id. at 643-44, 435 A.2d at 863 (quoting Brown v. Hall, 27 Cumb. L.J. 340, 349-50 (1977)).

The Superior Court in Millstein then noted:

"We agree that Brown does imply that a separation agreement that has merged into an order will not be given effect. Id. 495 Pa. at 642, 435 A.2d at 862 '[W]here . . . a property settlement agreement has not merged into the [divorce] decree, the principle in no way affects the parties' continuing liability between themselves for separate contractual obligations.' (Emphasis in original.) We are satisfied, however, that here the parties' separation agreement did not merge into the support order, and that it therefore continued to be an independent source of obligation."

Having found, as we have in this case, that the parties' separation agreement did not merge into a divorce decree, the Superior Court upheld the lower court order refusing to consider a reduction of a support order based upon a change in circumstances.

By contrast, in Commonwealth ex rel. Tokach v. Tokach, 326 Pa. Super. 359, 474 A.2d 41 (1984),

the Superior Court considered a case in which the then husband and wife had signed an agreement which provided for support of the couple's two minor children. The child's support provision was one element of a comprehensive property settlement claim. The agreement was drawn in anticipation of a forthcoming divorce which was later entered. The divorce decree expressly incorporated the written property settlement agreement in its entirety. The agreement provided that the husband would pay $350 per month toward the support of his two children and that this payment was to be based on the husband's net earnings being approximately $1200 per month. Following the divorce the husband filed a petition to modify the support agreement based upon what he claimed was a change in circumstances involving a reduction of earnings. The Superior Court affirmed a lower court holding that the court had power to reduce the support order to $225 per month.

The Superior Court distinguished Brown v. Hall, supra, and Millstein v. Millstein, supra. It noted that both Brown and Millstein involved agreements which had not been incorporated into any order of the court and were, therefore, separate contractual agreements. In this case the Superior Court stated that the agreement was expressly incorporated into the divorce decree. The court noted:

"Although some jurisdictions recognize a distinction between *incorporation* of a settlement agreement and *merger* of an agreement into a divorce decree,[3] no such distinction has ever been held by a Pennsylvania appellate court to affect the power of

---

3. See Johnston v. Johnston, 297 Md. 48, 465 A.2d 436 (1983) (settlement agreement incorporated, but not merged, into divorce decree remains a separate, enforceable contract).

the trial court to modify the amount of child support. We therefore hold that once a settlement agreement is incorporated into a divorce decree, either by reference or set out in full, the settlement agreement merges into the decree and should no longer be given independent effect. See Millstein v. Millstein, 311 Pa. Super. at 506, 457 A.2d at 1296 ('. . . we agree that Brown does imply that a separation agreement that has merged into an order will not be given effect.'). Where there is only a court-ordered support payment obligation, the general rule is that the amount of support payments is not final and may be increased or decreased where the financial conditions of the parties change. Commonwealth v. Vogelsong, 311 Pa. Super. 507, 457 A.2d 1297 (1983); Dunbar v. Dunbar, 291 Pa. Super. 224, 435 A.2d 879 (1981). Where, as here, the contractual agreement is merged into the court's order, the agreement takes on the identity of a court order and the contract as a separate entity ceases to exist. The hearing judge therefore was within his authority to consider the request by appellee to reduce the required monthly child support payments."

Accordingly, we would conclude the following:

1. As in Brown v. Hall, supra, we must look to the agreement in determining the intent of the parties as to whether there is a merger of the agreement into a divorce decree, the effect of which could eliminate the independent effect of the agreement.

2. As in Millstein v. Millstein, supra, where there has been no merger of the agreement into a divorce decree, a court does not have the authority to lower a court order based upon changed financial circumstances where the parties have taken an agreed support provision and had it entered on the domestic relations docket.

3. Form over substance should not be used to alter substantive contractual rights agreed to by the parties. Where the parties intend that their agreement not merge into a divorce decree, language in the agreement which provides that it be incorporated into any future divorce decree should not dictate whether there has been a merger where the clear intent of the parties is otherwise. This is especially true on the facts of this case where the parties submitted the agreement to the court to be "adopted" and the court ultimately approved it. Obviously this procedure was used to make the agreement enforceable under §503 of the Divorce Code.[4]

4. The Superior Court's holding in Tokach v. Tokach, supra, which uses the language of "merger" and "incorporation" interchangeably, should be strictly limited by the facts of that case to orders for child support.[5]

Having found that neither the court's approval of December 13, 1982, or its support order of July 9, 1982, constituted a merger of the parties written property settlement agreement into the divorce decree, and that the parties intended the $750 per week alimony payment to remain fixed and unchanging except upon the contingencies of the wife's death or remarriage, we conclude that defendant's petition through the domestic relations office to lower the court order of July 9, 1982 must be

---

4. Act of April 2, 1980, 63 §503, 20 P.S. §503.

5. As noted in Capponi v. Capponi, infra, there are even more compelling reasons for enforcing fixed payments of alimony which are part of a comprehensive property settlement agreement made in contemplation of divorce. Furthermore, we would note that the Pennsylvania Supreme Court appears to have made a distinction between the concept of "incorporation" and "merger." See Busswell v. Busswell, 377 Pa. 287, 105 A.2d 608 (1954).

denied as the court is without authority to lower that order based upon the defendant's claim of changed financial circumstances. Millstein v. Millstein, supra.[6]

Accordingly, we will dismiss defendant's petition to lower the July 9, 1982 order docketed in the domestic relations office and further order compliance therewith. Plaintiff's petition to enforce the payment of alimony pursuant to §503 of the Divorce Code will be held in abeyance pending a determination of the effectiveness of the enforcement procedures pursuant to the court order of July 9, 1982.

---

6. We have no separate suit for enforcement at law or equity before us. Our decision to enforce the alimony payment under the terms of the court order through the domestic relations office precludes our having to decide the thornier issue of whether or not enforcement pursuant to plaintiff's petition under §503 of the Divorce Code would allow defendant to seek a reduction in the order based upon a change in financial circumstances. In Capponi v. Capponi, 132 P.L.J. 583 (1984), the parties in a divorce case entered into a consent order for a fixed amount of alimony payable over a specified period of years. The order was silent as to the modifiability of the award. The Allegheny County court held that where the amount and duration of alimony payments are part of an overall settlement process in which the parties' marital property is involved, the order is not subject to being modified upon a change in financial circumstances.

It concluded that the Superior Court's holding in Tokach v. Tokach, supra, was limited by its facts to orders for child support. We would note, however, that §501(f) of the Divorce Code provides that whenever the court approves an agreement of the payment of alimony voluntarily entered into between the parties, such agreement shall be deemed the order of the court and may be enforced as provided by §503. However, the enforcement options in §503 are only applicable to the payment of alimony or alimony pendente lite provided in §§501 and 502. In §501, the alimony provision, sub-paragraph (e) provides that any order entered pursuant to that section is subject to further order of the court upon changed circumstances.

ORDER OF COURT

And now, this February 13, 1985, defendant's petition to decrease the alimony order entered in the domestic relations office on July 9, 1982, is denied. Defendant is directed to currently pay this order and to pay all arrearages owing thereon not later than 30 days from this date. Should there be any failure to comply with this order, a petition for civil contempt should be promptly initiated.