## Yamas v. Doto

*Daniel McGee*, for plaintiff.
*Robert C. Rayman*, for defendant.

BROWN, JR., *P.J.*, July 3, 1985—

PROCEDURAL AND FACTUAL BACKGROUND

This matter comes before the court upon plaintiff's exceptions to the report and order of hearing officer. The sole issue before this court is whether or not we have jurisdiction to hear defendant's petition to reduce support payments. The hearing officer concluded this court does have jurisdiction. Plaintiff excepts to that conclusion. The relevant facts are as follows:

Plaintiff Jean Merryl Yamas and defendant Michael Anthony Doto were married on August 22, 1970. The parties have two children, Kimberly Ann (born March 15, 1971) and Jessica Marie (born February 28, 1974). On March 1, 1981, the parties separated. On September 22, 1981, the parties executed a custody, support and separation agreement that provided, inter alia, for support of their two children by Mr. Doto.

Their initial agreement was followed by a second, separately executed agreement for order of support that was signed by both parties on September 28, 1981, and approved as an order of this court on November 23, 1981. The support provision in the September 22, 1981, agreement and the provision in

the November 23, 1981, order of support provided for the same amount of support.

On January 27, 1982, this court entered a decree in divorce which stated that the initial, comprehensive agreement dated September 22, 1981, was "made part of this Decree in Divorce." The support provision in said agreement states "under no circumstances shall [the payment] be less than $311.17 per month . . . ." (Paragraph 16.) The same paragraph states the support provision shall remain "in full force and effect unless and until terminated under and pursuant to the terms of this agreement." Id. The agreement does not contain any provision for reduction in payment.

## DISCUSSION

The hearing officer concluded from the above facts that the initial agreement, dated September 22, 1981, lost its separate legal identity upon creation of the agreement for order of support and entry of decree in divorce. First, the hearing officer determined the agreement was incorporated into the divorce decree. Therefore, pursuant to Commonwealth ex rel. Tokach v. Tokach, 326 Pa. Super. 359, 474 A.2d 41 (1984), which abolished any distinction between *merger* and *incorporation,* the agreement lost its separate identity.

Second, the hearing officer pointed to the agreement for order of support, signed by Mr. Doto on September 28, 1981. He held the effect of this latter agreement was to subject the parties to the jurisdiction of this court. We agree with the hearing officer's first conclusion and, on that basis, we confirm this court's jurisdiction to hear the instant petition.

Prior to Tokach, supra, many practitioners and judges assumed an agreement that was *incorporat-*

*ed* by reference into a divorce decree (as if set forth in full) would retain its own separate legal identity. Alternatively, an agreement that was *merged* into a divorce decree lost its separate identity — as the word *merge* would seem to indicate. The distinction between the two concepts results in specific income-tax consequences for the parties involved. See Internal Revenue Service Ruling 811-8 (tax effect of remarriage on alimony payments where agreement is merged); 23 P.S. §501(e) (termination of legal obligation for alimony upon remarriage); Commissioner v. Lester, 366 U.S. 299 (1961) (unallocated payment to spouse is considered alimony for tax purposes).

Tokach abolished this distinction, at least with regard to child support payments, by providing that the Pennsylvania appellate courts do not recognize a distinction between *merger* and *incorporation*. Id. at 361, 474 A.2d at 42. The decree before the court in Tokach specifically stated that the agreement "be incorporated in this final decree as if set forth in full." The court held the agreement should no longer be given independent effect.

The divorce decree sub judice simply states that the agreement was to be "made part of this decree in divorce." Whether or not this language amounts to a merger or an incorporation by reference is of no consequence, since Tokach effectively eliminated any distinction (at least in terms of child support payments); see VanKirk v. VanKirk, 336 Pa. Super. 502, 485 A.2d 1194 (1984).

In Madnick v. Madnick, 339 Pa. Super. 130, 488 A.2d 344 (1985), the Pennsylvania Superior Court specifically confined the holding of Tokach to cases analogous to the one sub judice, where an agree-

ment is *incorporated, merged* or presumably *made part of* a divorce decree. Id. at 133, 488 A.2d at 345, at n.1. The decision in Madnick implies that a court need not ascertain the parties' intentions in entering an agreement, if the agreement falls within "the Tokach exception." Id. Although Tokach is a departure from the rule of law enunciated in Millstein v. Millstein, 311 Pa. Super. 495, 457 A.2d 1291 (1983), it is nonetheless binding upon the facts before this court.

We choose not to draw distinctions between the language used in the instant divorce decree and that in the decree before the court in Tokach, for such distinctions would only further confuse the practice of law in this judicial district. We find the parties clearly intended to incorporate the agreement into the decree in divorce as that term had been used prior to Tokach. The Pennsylvania Superior Court, however, has held that regardless of what the parties may intend, incorporation results in automatic merger in such an instance. That rule of law has been examined by another Superior Court panel subsequent to Tokach and reaffirmed with regard to facts analogous to those before this court. Madnick, supra.

Accordingly, we assert our jurisdiction over defendant's petition.


## O R D E R

And now, this July 3, 1985, it is hereby ordered that the decision of the hearing officer regarding this court's jurisdiction is affirmed. This court asserts its jurisdiction to hear defendant's petition to reduce support payments.