**Freda Ann DION**

v.

**Kenneth Bruce DION**

No. 86–4977.

United States District Court,
E.D. Pennsylvania.

Jan. 21, 1987.

Stephen H. Silverman, Jenkintown, Pa., for plaintiff.

Deborah E. Kolodner, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

VANARTSDALEN, Senior District Judge.

This case involves the enforcement of a separation agreement under Pennsylvania law. Freda Ann Dion and Kenneth Dion were divorced in 1978. Immediately prior to the divorce, they entered into a separation agreement which was not merged or incorporated into the divorce decree. The agreement provided that Kenneth Dion must pay to Freda Ann Dion the sum of One Hundred Dollars per week in child support for their son, Joel, and the sum of One Hundred and Fifty Dollars per week as alimony. These payments were to cease upon her remarriage or upon their son's eighteenth birthday on July 29, 1986.

Kenneth Dion has allegedly failed to pay any support or alimony since November 1, 1983, the date on which he moved from Pennsylvania to Arizona. In or around July or August of 1986, Freda Ann Dion filed an action in the Court of Common Pleas of Montgomery County seeking child support and alimony. Although Ms. Dion characterized that suit as being limited to prospective support payments only, *see* Response to Defendant's Memorandum of December 14, 1986 at 2–3, the complaint filed expressly requests support and alimony for

the period of November 1983 to June 1986. Pursuant to the provisions of the Revised Uniform Reciprocal Enforcement of Support Act (URESA), 23 Pa.Cons.Stat.Ann. § 4501 et seq., the action was transferred to the courts of Arizona.

On August 22, 1986, Ms. Dion filed this action in federal court seeking recovery of arrearages in the support and alimony payments from November 1, 1983 to July 29, 1986. The defendant, Mr. Dion, has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1), regarding lack of personal jurisdiction, and 12(b)(2), regarding lack of subject matter jurisdiction. By an order dated December 3, 1986, I directed the parties to file appropriate affidavits with respect to the incorporation of the separation agreement into the divorce decree and with respect to the defendant's contacts with Pennsylvania. This further briefing being complete, the motion is ripe for decision.

■ The defendant contends that the court lacks subject matter jurisdiction because this otherwise appropriate diversity case falls within the domestic relations exception to diversity jurisdiction. In *Solomon v. Solomon*, 516 F.2d 1018 (3d Cir. 1975), the Third Circuit Court of Appeals reiterated its acceptance of the domestic relations exception. Under that doctrine, federal courts do not have jurisdiction of domestic relations cases *"except* where necessary to the effectuation of prior state court judgments involving the same matters or where jurisdiction lies by dint of participation and review of territorial courts." 516 F.2d at 1024 (footnotes omitted). In that case, Mrs. Solomon had brought a diversity action for past support based upon a settlement agreement executed in Pennsylvania. The husband conceded that he had terminated payments, but claimed that his actions were justified because the plaintiff had materially breached the agreement by refusing to honor the husband's visitation rights. In fact, the plaintiff had removed the children to Florida in violation of the agreement and in violation of a state court order, and had

been declared in contempt of that court. *Id.* at 1019–1021, 1026.

The *Solomon* court found the domestic relations exception to be applicable for several reasons. Because the husband's defense was based on a determination of visitation rights, a resolution of the case would require the federal court to enter an arena traditionally reserved to the state courts—child custody disputes. The plaintiff in that case had also previously instituted a support action in the Montgomery County Court of Common Pleas, which action, because it had been continued generally until the plaintiff purged herself of contempt, was still pending. By accepting jurisdiction of the diversity action, the federal courts would have undermined and derogated both the state court's contempt citation and its decision to continue the support action. *Solomon*, 516 F.2d at 1024–1026.

The *Solomon* court recognized, however, that not every suit over separation agreement obligations was appropriately categorized as a "domestic relations" case. The court noted that absent the dangers present in *Solomon* itself, namely, the issue of child custody, the presence of a pending state action and the threat that the litigants may be playing one court system off against the other, a separation agreement might be litigated in the federal courts. *Id.* at 1025. In *DiRuggiero v. Rodgers*, the court refined its view of the domestic relations exception, explaining that the purpose of the exception rests on functional considerations:

An award in the first instance of divorce, alimony, child custody, visitation, or support requires the exercise of an informed discretion, discretion in which local institutions are expert and with which federal courts are unfamiliar. Such awards require continuing supervision over large numbers of cases, for which the federal courts are ill-equipped. Unlike local institutions, the federal courts are not supplemented by a professional social service staff. And on a more theoretical plane, the discretionary standards for an award of support, alimony, custody, or

visitation are so amorphous and flexible that the federal courts could not predict with any confidence that their application of state law would duplicate the result that would be obtained at the state level. 743 F.2d 1009, 1019 (3d Cir.1984).

Taking into account the circumstances in *Solomon,* and the functional considerations expressed in *DiRuggiero,* it is clear that this case does not fall within the domestic relations exception to diversity jurisdiction. No dispute exists over the parties' rights to custody of their son. There is no evidence that the plaintiff is attempting to play the state and federal court systems against one another as was evident in *Solomon.* Most importantly, this case does not involve issues which have traditionally been reserved to the state court systems with their expertise and professional support staff. This suit is, quite simply, an action on the contract. Under Pennsylvania law, a separation agreement for support which has not been merged into a divorce decree or support order creates a contractual obligation to provide support which is independent of any support obligation imposed under principles of domestic relations law. *Brown v. Hall,* 495 Pa. 635, 435 A.2d 859, 861–863 (1981); *Millstein v. Millstein,* 311 Pa.Super. 495, 457 A.2d 1291, 1294, 1297 (1983). As such, the separation agreement is governed by the law of contracts. A court may not remake or modify the agreement; the contractual support obligation may not be decreased on the grounds of changed circumstances. *Id.; see Hollman v. Hollman,* 347 Pa.Super. 289, 500 A.2d 837, 842–843 (1985) (Comparing enforcement of support or alimony orders by domestic relations courts and their professional staff with conventional enforcement of separation agreements under contract law). In other words, a court need not have expertise in domestic relations cases in order to resolve purely contractual disputes arising from a separation agreement like the agreement in this case.

■ The defendant argues that this diversity action is within the domestic relations exception because a pending state action exists, namely, the URESA action in Arizona. Absent exceptional circumstances, however, the fact that a state action is pending is not a reason for a federal court to decline to exercise jurisdiction which is otherwise proper. *Harris v. Pernsley,* 755 F.2d 338, 345 (3d Cir.1985). No purpose underlying the domestic relations exception would be served by declining jurisdiction on this ground. In *Solomon,* the existence of the state court proceeding was significant only because that state action had been continued due to the outstanding contempt citation against the plaintiff in that case. The third circuit was concerned that accepting jurisdiction would undermine the state court's position, allowing the plaintiff to circumvent the state court by drawing the federal court into the fray. These dangers are not present in this case. The defendant's motion to dismiss the complaint for lack of subject matter jurisdiction will be denied.

The defendant also contends that this court lacks personal jurisdiction over him. This contention is based on the fact that Dion has been a resident of Arizona for approximately three years, and allegedly has had no contact with Pennsylvania during that time. In resolving this issue, analysis must begin with Federal Rule of Civil Procedure 4(e), which permits a federal district court to exercise personal jurisdiction over a nonresident to the extent allowed under the law of the state where the district court is located. *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984). The Pennsylvania Long Arm Statute extends the jurisdiction of a court over such persons "to the fullest extent allowed under the Constitution of the United States," noting that personal jurisdiction may be "based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.Cons.Stat.Ann. § 5322(b). In other words, the reach of the Pennsylvania statute, and accordingly the reach of this court's jurisdiction, is coextensive with the due process clause of the

federal Constitution. *Time Share*, 735 F.2d at 63.

Due process requirements are satisfied in cases concerning the assertion of *in personam* jurisdiction over a nonresident where it is demonstrated that the nonresident has such minimum contacts with the forum state that "... the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). Two types of personal jurisdiction have been identified by the courts. General jurisdiction exists when the defendant has maintained continuous and substantial contacts with the forum, but the claim against the defendant is unrelated to or does not arise from these contacts. Specific jurisdiction exists in cases in which the claim is related to or arises out of the asserted minimum contacts which the defendant has with the forum. In order to establish specific jurisdiction, there must be such minimum contacts as establish a relationship between the defendant, the forum and the litigation. *Dollar Savings Bank v. First Security Bank of Utah, N.A.*, 746 F.2d 208, 211 (3d Cir.1984). Because it is uncontraverted that the defendant has no continuing presence in Pennsylvania, my attention will be devoted to the issue of specific jurisdiction.

■ The critical purpose of minimum contacts analysis is to guarantee that individuals have fair warning that engaging in a particular activity may subject them to the jurisdiction of a foreign jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). This fair warning requirement is satisfied if the defendant has purposely directed his activities at a resident of the forum state. *Id.; Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). More specifically, with respect to interstate contractual obligations, the Supreme Court has emphasized that parties who have reached out and created continuing relationships and obligations with citizens of another state may be properly subject to sanctions and regulation in the other state for the consequences of their activities. *Burger King*, 105 S.Ct. at 2182; *McGee v. International Life Insurance Co.*, 355 U.S. 220, 222–223, 78 S.Ct. 199, 200–201, 2 L.Ed.2d 223 (1957). The court must look to such factors as prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of dealing in determining whether the defendant purposely established minimum contacts with the forum. *Burger King*, 105 S.Ct. at 2186.

■ The claim against the defendant is based upon a separation agreement which set forth certain support obligations imposed upon the defendant. This claim certainly is related to a number of contacts which the defendant has with Pennsylvania. The marriage itself began, existed, and ended in Pennsylvania. The separation agreement was negotiated and executed by the defendant and plaintiff while both of them were residents of Pennsylvania. The agreement contains a choice of law provision which provides that it shall be "construed by, and governed in accordance with, the laws of the Commonwealth of Pennsylvania."

Clearly in this case, the plaintiff intentionally created a contractual relationship with a Pennsylvania resident in Pennsylvania while he himself was a Pennsylvania resident. It is entirely fair to subject him to the jurisdiction of a court located in that state. *See McGee*, 355 U.S. 220, 223–224, 78 S.Ct. 199, 201–202 (Jurisdiction upheld where insurance contract was delivered by mail by defendant to California resident in California). This conclusion is bolstered by the fact that the contract expressly provides that Pennsylvania law would govern disputes over the contract. As the Supreme Court noted in the *Burger King* case, although such a provision standing alone would be insufficient to confer jurisdiction, it does reinforce the defendant's deliberate affiliation with the forum state and the reasonable foreseeability that he might be haled into court in that state. 105 S.Ct. at 2187.

Having established that the defendant has purposefully created minimum contacts with the forum state, I must determine whether other factors would nevertheless cause the assertion of personal jurisdiction to violate traditional notions of fair play and substantial justice. *Burger King,* 105 S.Ct. 2174, 2184. These factors include the burden on the defendant in litigating in a distant forum, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). The burden is placed on the defendant, however, to present a compelling case demonstrating that one or more of these factors requires the court to decline otherwise proper jurisdiction. *Burger King,* 105 S.Ct. at 2185. The defendant has failed to present any persuasive argument to that effect. For these reasons, the defendant's motion to dismiss the complaint for lack of personal jurisdiction will be dismissed.