532 A.2d 823

**Elissa Barbara Potter FACTOR**

v.

**Marvin W. FACTOR, Appellant. (Three Cases)**

Superior Court of Pennsylvania.

Argued Feb. 25, 1987.

Filed Aug. 24, 1987.

Reconsideration Denied Nov. 2, 1987.

Frederick Cohen, Norristown, and Charles V. Stoelker, Jr., Philadelphia, for appellant (at 2031, 2129 and 2353).

Parker H. Wilson, Norristown, for appellee (at 2031, 2129 and 2353).

Before CIRILLO, President Judge, and TAMILIA and CERCONE, JJ.

CERCONE, Judge:

These consolidated appeals are from three orders of the lower court imposing sanctions against appellant, Mr. Factor, for contempt of court.

On January 17, 1985, the lower court entered a divorce decree which incorporated a property settlement agreement ("Agreement") executed by the parties on December 14, 1984. On April 4, 1986, appellee, Mrs. Factor, filed a petition seeking to hold appellant in contempt for his alleged willful noncompliance with the terms of the Agreement. The contempt petition raised the following issues:

1. Failure to make a lump sum payment of $20,000 to Mrs. Factor;
2. Failure to comply with the obligations to pay alimony to Mrs. Factor;
3. Failure to pay for certain automobile expenses incurred by Mrs. Factor;
4. Failure to reimburse Mrs. Factor for medical insurance expenses incurred on behalf of herself and the parties' children;
5. Failure to reimburse Mrs. Factor for medical expenses for the parties' children not covered by medical insurance;
6. Failure to comply with provisions regarding payment for summer camp for the parties' child, Jed;
7. Failure to reimburse Mrs. Factor for clothing expenditures for the parties' children;
8. Failure to pay for therapy for the parties' child, Jed;
9. Failure to pay for the education expenses for the parties' child, Matthew;

10. Failure to reimburse the parties' child, Jed, for ice hockey expenses; and

11. Failure to verify the existence of insurance coverage.

Following the filing of an answer by appellant, a series of hearings were held on the petition on June 9, June 26 and June 30, 1986. On July 9, 1986, the lower court issued an order finding appellant in contempt of various provisions of the Agreement and directing appellant, "in lieu of any fine", *inter alia,* to reimburse appellee for all unpaid counselling and tutoring for their son Jed no later than December 31, 1986; to pay one-half of their son Matthew's college expenses ($7000.00) forthwith and to pay the balance by January 1, 1987; and to pay $12,000.00 for Jed's boarding school expenses in the manner required by the institution.

Because Mr. Factor failed to comply with the court's order of July 9, 1986 as it concerned Jed's education, Mrs. Factor filed a Motion for Sanctions and a Motion to Dismiss or Strike Mr. Factor's request for post-trial relief. Following answer and hearing on August 6, 1986, Judge Salus entered the Order of August 6, 1986 granting the motion of Mrs. Factor to dismiss Mr. Factor's motion for post-trial relief and imposing sanctions for failure to comply with the court's Order of July 9, 1986.

Mrs. Factor filed a second motion for sanctions on August 15, 1986. This motion for sanctions concerned Mr. Factor's failure to comply with the Order of July 9, 1986 regarding the education expenses of the parties' son Matthew. After a hearing, the court entered its final order imposing sanctions on August 27, 1986.

Appellant has raised several issues for review by this court on appeal. They are:

1. Did the trial court lack subject matter jurisdiction to hear Wife's Petition for Contempt?

2. Did the trial court err by issuing its July 9, 1986 Order whereby it found Husband in contempt and

directed him to pay certain monies and perform certain acts on behalf of Wife and the children?

(a) Did the trial court err by hearing testimony and deciding the claim of Jed's matriculation at boarding school in that the issue was never found in the pleadings nor was it an obligation under the parties' Agreement?

(b) Did the trial court err in ordering Husband to pay $12,000 toward Jed's education costs and to pay the tuition costs for Matthew at St. Lawrence University?

(1) Did the trial court err by ordering Husband to pay said tuitions without considering his parental right, as per the Agreement, to participate in the selection of schools?

(2) Did the trial court err by ordering Husband to pay said tuitions without considering his ability to pay?

(3) Did the trial court err by ordering husband to pay the costs of Jed's tutoring?

(c) Did the trial court err by not considering Husband's rights under the United States Constitution?

3. Did the trial court lack jurisdiction to conduct the hearings of August 6, 1986 and August 26, 1986?

4. Did the trial judge's *ex parte* communications with wife and other violations of the Code of Judicial Conduct create such an appearance of impropriety as to require his own disqualification and reversal of orders as required by Cannon 3(C)(1)(a), and reversal of Orders?

## 1. Subject Matter Jurisdiction of the Court Below

■ Appellant contends that the lower court lacked subject matter jurisdiction to hear and decide appellee's Petition for Contempt because the matters she sought to enforce arose from a comprehensive property settlement agreement (a contract) and not from a prior order of the court. We need only look to the Divorce Code of 1980, 23

P.S. § 102 *et seq.*, to determine that appellant's claim is without merit. Section 401(b), provides in pertinent part:

*Any decree granting a divorce* or an annulment, *shall include* after a full hearing, where these matters are raised in the complaint, the answer or other petition, an order or orders determining and disposing of existing property rights and interests between the parties, custody and visitation rights, child support, alimony and any other related matters, *including the enforcement of separation agreements voluntarily entered into between the parties.* In the enforcement of the rights of any party to any such matters, the court shall have all necessary powers, including but not limited to, *the power of contempt. . . .*

23 P.S. § 401(b) (emphasis added). The settlement agreement specifically provided that it be incorporated, but not merged, with the divorce decree for purposes of enforcement.

Appellant cites numerous cases to support his proposition that property settlement agreements voluntarily entered are contracts and should be enforced as such. *Accord: Brown v. Hall,* 495 Pa. 635, 435 A.2d 859 (1981); *Casper v. Casper,* 359 Pa.Superior Ct. 559, 519 A.2d 493 (1986); *Hollman v. Hollman,* 347 Pa.Superior Ct. 289, 500 A.2d 837 (1985); *Millstein v. Millstein,* 311 Pa.Superior Ct. 495, 457 A.2d 1291 (1983); *Commonwealth ex rel. Smith v. Smith,* 260 Pa.Superior Ct. 203, 393 A.2d 1224 (1978). Each of these cases relied on by appellant involves the enforcement and/or modification of a support or property settlement agreement entered prior to the effective date of the Divorce Code, July 2, 1980. Therefore, those cases are not determinative of the issue at hand, see *Young v. Young,* 507 Pa. 40, 488 A.2d 264 (1985); *Casper v. Casper, supra,* (support agreement entered prior to effective date of Divorce Code is not subject to its dicates); *Hollman v. Hollman, supra,* ("Also, the fact that the agreement here was created long before the Divorce Code of 1980, causes the Code to be inapplicable to this case." 347 Pa.Superior Ct. at 299, 500

A.2d at 842), although we may look to them for understanding the need which prompted the enactment of section 401(b).

In defining the meaning of section 401(b), we are guided by the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1501 *et seq.* That act provides that the object of all statutory construction is to ascertain the intent of the legislature, and that the legislature's intent may be ascertained by considering the necessity for the statute, the mischief to be remedied, the object to be attained, and the consequences of a particular interpretation; that the legislature does not intend a result that is unreasonable, and intends to favor the public interest over any private interest. 1 Pa.C.S.A. §§ 1921(a), (c)(1), (3), (4), (6); 1922(1), (5); 1928(c).

In accordance with the provisions of the Statutory Construction Act, we initially note that *Brown v. Hall, supra,* and the plethora of cases following it, clearly indicates that the courts were in need of legislative guidance as to the exact issue at hand herein, that is, what enforcement mechanism should be followed by a party seeking to enforce the terms of a mutually agreed upon support or property settlement agreement.[1]  Sectin 401(b) provides that necessary direction: "Any decree granting a divorce ... shall include ... an order or orders determining ... any other related matter including the enforcement of separation agreements voluntarily entered into between the parties."  Section 401(c) further defines the divorce court's jurisdiction thus:

> In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purpose of this act, and may grant such other relief or remedy as equity and

1. A contingent issue generally found in these cases is whether the lower court has the jurisdiction to modify the mutually agreed upon arrangements or contracts.  We need not address that issue in this case as both parties, and the lower court, agree that the court was simply enforcing the agreement as written and not attempting to modify its terms.

justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

23 P.S. § 401(c).

Additionally, the eighteenth paragraph of the parties' agreement specifically stated that the parties intended to incorporate the agreement into the divorce decree for the purpose of enforcement. It reads:

In the event either Husband or Wife at any time hereinafter obtain a divorce in the cause presently or hereinafter pending between them, this agreement and all of its provisions shall be incorporated *for the purposes of enforcement only,* but not merged into any such judgment for divorce, either directly or by reference. (emphasis added)

By reading sections 401(b) and 401(c) in *pari materia,* it is clear that the lower court had jurisdiction to enforce the agreement in equity. Paragraph eighteen makes it clear that the parties intended the agreement to be enforced by such procedures as were pursued by appellee below. *Accord: McGough v. McGough,* 361 Pa.Super. 391, 522 A.2d 638 (1987) (court must look to the intent of the parties, by analyzing terms of the agreement, to determine whether they intended property settlement agreement to be enforced through procedures established in the Divorce Code). Therefore, we find no merit to appellant's claim that the lower court lacked subject matter jurisdiction over this case.

## 2. Order of July 9, 1986

Following three days of hearings, the trial court entered an extensive order finding appellant in violation of the terms of the separation agreement and in contempt of court on certain of those violations. Appellant specifically challenges those parts of the order which require him to pay for his son Jed's matriculation in a private boarding school, his son Matthew's matriculation in St. Lawrence University, and the cost of Jed's tutoring.

Appellant argues that the trial court's admitted *ex parte* communication with appellee mandates that he be granted a new hearing on the issues previously enumerated.

On June 30, 1985, at the conclusion of three days of testimony, before rendering his decision, Judge Salus called appellee into his chambers. Neither appellant nor his counsel were present at that meeting which lasted approximately one half hour. At its conclusion, appellant's counsel asked that the record be opened in order that he might register his objection to the *ex parte* communication.[2] At that time Judge Salus admitted meeting with appellee and said he did so to elicit information upon which to base his decision. The conversation between appellant's counsel and Judge Salus was as follows:

"Mr. Cohen: If your Honor please, I would have to ask a question for the record. As we were breaking up the hearing and about to leave a half hour ago, you called Mrs. Factor back into chambers to talk to her. My client and I both would like some indication—

The Court: I will tell you exactly what I did. I wanted to find out about Jed's attendance factors by reason of his educational disabilities, because I wasn't satisfied with the psychological—or any of the other things that I heard on the record—in terms of my queering [sic] and questioning his ability to go to a prep school away from home. I want to know his supportive needs, and I wanted to be assured from Mrs. Factor that he wasn't being sent away for her convenience.

Mr. Cohen: My problem is, your Honor, when she relays that information to you in that fashion, I don't have an

2. Appellee argues that appellant waived his right to raise this issue by failing to timely object to Judge Salus' *ex parte* communications. Upon our review of the transcript, we conclude that appellant's counsel, while not saying "I object", clearly informed the court that he found the *ex parte* conversation objectionable and counsel set forth relevant reasons for his objection. The purpose of a timely objection is to put the court on notice of the alleged error and to afford the trial court an opportunity to take corrective action in rectification of its own trial error. *See Fudala v. Leedom,* 270 Pa.Superior Ct. 322, 411 A.2d 548 (1979). We find that this issue has been preserved for appellate review.

opportunity, nor does my client, to know what was said or what was claimed, or to question her about it for—
The Court: Well, you know what? All questions of mice and men are such that I have to deal with people and their testimony in court and their credibility. Now, I didn't have the opportunity to see Jed. I am still up in the air about that. I'm not convinced that Jed should necessarily be sent away to school, nor am I convinced that he shouldn't. I still have difficult situations and I'm not in a position to make those determinations. It may affect him in the future. I just felt that I didn't have enough exposure to the thing to find out what the problem was. I want to find out what his independent factors were, in terms of his activities. I want to find out his ability to deal with his peers, and a lot of other things which all went to this ability to be independent, and I wanted to find out how he was with regard to his mother and his father, in terms of needing their support, versus the other children, in her assessment."

Judge Salus issued the following order clearly relying on information he had gleaned *dehors* the record:

"AND NOW, this 9th day of July, 1986, after a full hearing over four separate Court sessions involving both professional and lay witnesses, *and upon the Court's own inquiry into matters relevant and not presented by either counsel and critical to the Court's informed decision in the best interest of the parties herein and their children, . . . ."* (emphasis added)

■ It is difficult for this court to perceive any reason why Judge Salus engaged in this *ex parte* conduct. Without a doubt, he could have questioned appellee from the bench in an open courtroom and elicited the information he deemed necessary to his decision. Appellant is entitled to a fair hearing which encompasses, at the very least, the right to cross-examine witnesses. *See Pubusky v. D.M.F., Inc.,* 428 Pa. 461, 239 A.2d 335 (1968); *Rich Hill Coal Co. v. Bashore,* 334 Pa. 449, 7 A.2d 302 (1939). In *Pubusky, supra,* the Supreme Court found that a denial of the par-

ties' "basic rights" to cross-examine witnesses and present relevant testimony required the vacation of a preliminary injunction decree. *Accord: Ogontz Controls Co. v. Pirkle,* 329 Pa.Superior Ct. 8, 477 A.2d 876 (1984) and *Veneziale, et al. v. Raudenbush,* 43 Pa.Commonwealth 263, 402 A.2d 295 (1979) (Both cases follow *Pubusky* ). Appellant's basic right to cross-examination was violated by the court below. Accordingly, we reverse that lower court's order as it applies to the educational placement and tutoring needs of the parties' sons Jed and Matthew.[3] If the parties cannot amicably reach a decision on those issues, a rehearing shall be held before a judge other than Judge Salus.[4]

### 3. Orders of August 6, 1986 and August 27, 1986

■ The final issue we must address is the status of two contempt orders issued by the lower court ordering appellant to comply with its disputed July 9th order. Appellant framed this issue in terms of whether the court had jurisdiction to hear appellee's motions for sanctions as appellant had filed a timely appeal from the July 9th order and simultaneously posted with the Prothonotary of the Court of Common Pleas, Montgomery County, his Notice of Ap-

3. Because of our resolution of appellant's claim on this issue, we need not address appellant's issues numbered 2(a), 2(b), and 2(c).

4. We are remanding this case for retrial before a different trial judge in order to protect the integrity of the judiciary from any appearance of impropriety. *Accord: Commonwealth v. Darush,* 501 Pa. 15, 25, 459 A.2d 727, 733 (1983) (Roberts, C.J., dissenting: "[E]very judicial proceeding must not only be fair; it must appear to be fair.") Because the trial court is sitting as a fact finder in this case, Judge Salus' reliance on *ex parte* information taints the appearance of his ability to be impartial.

We find guidance for the remand conditions we are imposing in *Commonwealth ex rel. Allen v. Rundle,* 410 Pa. 599, 189 A.2d 261 (1963) (denial of *habeas corpus* reversed and record remanded for disposition before different judge despite record that shows no actual prejudice); *Commonwealth ex rel. Armor v. Armor,* 263 Pa.Superior Ct. 353, 398 A.2d 173 (1978) (remand for assignment of out-of-county judge or grant of change of venue despite review of record showing no actual bias).

Finally, we note that we are not here finding that Judge Salus erred in not *sua sponte* recusing himself below. Appellant had not filed a motion for recusal so that issue is not properly before us. *See Reilly by Reilly v. S.E.P.T.A.,* 507 Pa. 204, 489 A.2d 1291 (1985).

peal to the Superior Court and a Supersedeas Bond in the amount of $30,000.00.

The order of August 6, 1986 imposed sanctions for appellant's failure to comply with the court's July 9th order as it ordered appellant to pay for the educational and tutoring expenses of his son Jed. The August 27, 1986 order imposed sanctions for appellant's failure to comply with the July 9th order as regards payments for the educational expenses of the parties' son Matthew.

Because we have reversed the July 9th order in all respects relevant to the orders of August 6th and 27th, the issue of their enforcement is rendered moot.

Accordingly, the order of July 9, 1986 is reversed in part, case remanded for rehearing before a judge, other than Judge Salus, if the parties cannot amicably resolve the issues. The orders of August 6, 1986 and August 27, 1986 are reversed. Jurisdiction relinquished.