## Urlaub v. Urlaub

*Therese A. Hardiman, domestic relations advocate,* for plaintiff.

No appearance for defendant.

MILLER, *J.*, January 28, 1993—Plaintiff and defendant, now divorced, are the parents of a son, Myles Jordan Urlaub, born March 21, 1990. Since the time of the parties' divorce in this county, on April 19, 1991, the child has been residing with plaintiff. Plaintiff initiated an action for support of the minor child under the Uniform Reciprocal Enforcement of Support Act (URESA) by filing a complaint which was forwarded to the Circuit Court of Cook County, Ill.—the site of defendant's residence.

As a defense to plaintiff's attempts to impose a child support obligation upon him in Illinois, defendant alleges that the post-nuptial agreement, executed by the parties on November 20, 1990, prevents plaintiff from seeking child support from him. He maintains that the parties agreed to relinquish any rights to support from each other which they may have had prior to the execution of the agreement, and that, further, said waiver included child support as well as spousal support.

On December 29, 1992, the Monroe County Domestic Relations Office received an order from the Cook County

Court, Domestic Relations division, requiring that a declaratory order be issued by this court regarding the validity of the parties' post-nuptial agreement as it relates to the defense being raised by defendant in the URESA action in Illinois. Monroe County Domestic Relations then filed the instant request for relief.

With this as factual and procedural background, we proceed to a disposition of the issue before us.

We are empowered to grant the relief requested by the Declaratory Judgments Act, 42 Pa.C.S. §7531 et. seq., which provides, in section 7532, that:

"§7532.  *General scope of declaratory remedy*—

"Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree." July 9, 1976, P.L. 586, no. 142, §2, effective June 27, 1978.

Further, under section 7533:

"§7533.  *Construction of documents*—

"Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder." July 9, 1976, P.L. 586, no. 142, §2, effective June 27, 1978.

In addition, we recognize that we are obligated by the provisions and spirit of URESA to comply with Illinois request for the ruling.

As noted by the Commonwealth Court in *Curtis v. Cleland,* 122 Pa. Commw. 328, 331, 552 A.2d 316, 318 (1988): "The Declaratory Judgments Act is remedial in nature and its purpose is to provide relief from uncertainty and establish various legal relationships." However, declaratory relief is only available where an actual controversy exists, is imminent or inevitable. *Pennsylvania Turnpike Commission v. Hafer,* 142 Pa. Commw. 502, 597 A.2d 754 (1991). As we find an actual controversy does exist in the instant matter, we shall proceed.

The Pennsylvania Rules of Civil Procedure 1601-1604 permit a plaintiff to seek declaratory relief either exclusively or as ancillary relief in a pending matter. Here we find that a declaration of the parties' rights and obligations under the post-nuptial agreement executed as part of their divorce proceedings is essential to plaintiff's ability to prosecute defendant for child support.

Our examination of the parties' agreement reveals the following language:

"Paragraph 1 (a) 'Each of the parties hereto covenants and agrees that neither will deny or endeavor to abridge any right of support or maintenance which the other might have because of any alleged conduct with regard to any third persons; provided, however, the parties hereto recognize that it is intended that this agreement shall and does supersede any rights or claims to support....'

"Paragraph 3 (b) 'Each of the parties specifically covenants ... that the execution of this agreement and its terms are accepted by them as including, inter alia, full and

complete payment by the other for any and all past, present, or future obligations of support, care, education, maintenance ... of the other and each covenants ... that no action will be instituted by them (or claim of any kind be made) for their support ... against the other in any court or any jurisdiction whatsoever. The parties hereto recognize, acknowledge and agree that each of them hereafter shall not have and does not have any rights or claims for support, care and maintenance ... because the provisions herein in the nature of post-nuptial agreement are fair....'

"Paragraph 4 'Both parties do hereby relinquish ... any claim, right or interest which they may have pursuant to the Divorce Code or otherwise to receive alimony, alimony pendente lite, temporary alimony, and/or spousal support from the other....'

"Paragraph 20 'This agreement shall be construed under the laws of the Commonwealth of Pennsylvania.'"

Further examination discloses that while the minor child is mentioned in the agreement (in the whereas clause and in paragraph 14), he is not a party to the agreement.

Our interpretation of the plain language of the document leads us to conclude that the parties were only bargaining with their right to support vis a vis each other, that is, with the right of each of them to claim spousal support from the other. The issue of support for the child is never expressly dealt with by the terms of the agreement.

Moreover, the Pennsylvania Supreme Court, in *Knorr v. Knorr,* 527 Pa. 83, 588 A.2d 503 (1991), expressly held that child support is not a proper subject for negotiation between divorcing parents; rather, the amount of support must be geared toward what is in the best

interests of the children, not what is the best deal that can be had for the parents. The court wrote:

"Parties to a divorce action may bargain between themselves and structure their agreement as best serves their interests.... They have no power, however, to bargain away the rights of their children.... Their right to bargain for themselves is their own business. They cannot in that process set a standard that will leave their children short." [citing *Sonder v. Sonder,* 378 Pa. Super. 474, 549 A.2d 155 (1988), and *Brown v. Hall,* 495 Pa. 635, 43 A.2d 859 (1981).] *Id.* 527 Pa. at 86, 588 A.2d at 505.

Based upon the foregoing, we hold that the provisions of the parties' post-nuptial agreement relating to support obligations determined only the issue of spousal support and did not in any way affect plaintiff's right to pursue defendant for support for their minor child.