**John DOE, a fictitious name, Plaintiff,**

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Defendant.**

**Civil Action No. 96-3951.**

United States District Court, E.D. Pennsylvania.

Aug. 15, 1996.

Ronald H. Surkin, Media, PA, L. Keith Lipman, Richard, DiSanti, Gallagher, Schoenfeld & Surkin, P.C., Media, PA, for plaintiff.

Richard L. McMonigle, Jr., McKissock & Hoffman, P.C., Philadelphia, PA, for Defendant.

## MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Plaintiff John Doe [1] has brought this action against defendant Provident Life and Acci-

dent Insurance Company alleging that defendant has improperly and in bad faith refused to pay benefits owed to plaintiff under three disability policies issued by defendant. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are of diverse citizenship and the amount in controversy is in excess of $50,000, exclusive of interest and costs.

Currently before the Court is the motion by defendants to dismiss Count I of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and to strike a portion of Count II pursuant to Federal Rule of Civil Procedure 12(f) ("Rule 12(f)"). (Document No. 9) For the following reasons, the motion will be granted.

## I. FACTUAL BACKGROUND

The following facts are based upon the well-pleaded allegations of the complaint. *See Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977).

In the late 1980's, plaintiff purchased three "own occupation, non-cancellable" disability insurance policies issued by defendant. At the time, plaintiff was employed as a trial lawyer and had been so employed for many years. Plaintiff has consistently paid all of the premiums due under these policies.

On November 17, 1993, plaintiff became disabled when he sustained serious injuries in an automobile accident. After reviewing information submitted by plaintiff and his treating physician, defendant agreed that plaintiff was totally disabled, as defined in the policies, from performing the duties of a trial attorney due to the physical injuries suffered in that accident. Defendant therefore paid plaintiff the benefits owed to him under the policies from the date of the accident to July 1994.

In July 1994, plaintiff applied to have his benefits continued due to the fact that he remained totally disabled from performing

his duties as a trial lawyer because of the severe clinical depression that he was experiencing in the wake of the automobile accident. After reviewing the information submitted by plaintiff and his treating psychiatrist, Jan W. Doeff, M.D., defendant agreed that plaintiff continued to be totally disabled from performing his duties as a trial lawyer and therefore continued to pay plaintiff the benefits owed to him under the policies.

Shortly thereafter, defendant began requiring plaintiff to submit on a monthly basis a new application for benefits and a new report from Dr. Doeff. Plaintiff and Dr. Doeff complied with these requirements and continue to do so. Then, in August 1995, defendant requested that plaintiff submit to a psychiatric examination by a doctor chosen by defendant, Robert M. Toborowsky, M.D. Dr. Toborowsky examined plaintiff on September 14, 1995 and submitted his report to defendant on November 7, 1995; in that report, Dr. Toborowsky concluded that plaintiff was no longer disabled from performing his occupation as a trial attorney. Based on this report, defendant terminated the disability benefits of plaintiff effective November 8, 1995.

Just before plaintiff received the letter informing him of the termination of his disability benefits, he was admitted to a hospital suffering from classic heart attack symptoms. Plaintiff was instructed to have a heart catheterization procedure, but his further treatment was complicated by the sudden and unanticipated termination of his disability benefits as this termination caused plaintiff great stress and anxiety. He was eventually able to have the procedure after defendant agreed to restore his disability benefits, although defendant paid these benefits under a full reservation of rights and continued to require plaintiff to submit benefit applications and reports from his treating physicians on a monthly basis. Plaintiff then underwent a balloon angioplasty operation and was ultimately diagnosed as having coronary artery disease.

---

1. In an Order dated June 19, 1996, this Court granted plaintiff permission to proceed under the pseudonym John Doe.

In April 1996, still relying upon the report of Dr. Toborowsky, defendant again terminated the disability benefits of plaintiff effective March 26, 1996. Communication continued between counsel for plaintiff and defendant after this date, however, and in May 1996 plaintiff sent defendant a report by a new medical specialist who concluded that plaintiff remained totally disabled and unable to perform his duties as a trial lawyer. Defendant refused, however, to restore the disability benefits owed to plaintiff. In addition, defendant demanded that plaintiff resume paying the premiums on the three policies; the premiums had been waived as a policy benefit during the time when defendant had agreed that plaintiff was totally disabled. Faced with both the denial of his benefits and the demand for premium payments, plaintiff filed the instant action.

## II. DISCUSSION

The complaint consists of two counts. In Count I, plaintiff asserts a claim in equity and seeks to have this Court declare that plaintiff is totally and permanently disabled under the policies and to require defendant to pay all past and future benefits owed without requiring plaintiff to submit monthly statements of claim and physician's statements. In Count II, plaintiff alleges that defendant acted in bad faith in denying his claims in violation of 42 Pa.Cons.Stat.Ann. § 8371.

■ In the instant motion, defendant seeks to have this Court dismiss Count I pursuant to Rule 12(b)(6) as improperly seeking equitable relief and so failing to state a claim upon which relief can be granted. In deciding a motion to dismiss made pursuant to Rule 12(b)(6), a court must take all well-pleaded factual allegations in the complaint as true; dismissal is only appropriate if the plaintiff could prove no set of facts that would entitle him to the relief requested. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Miree,* 433 U.S. at 27 n. 2, 97 S.Ct. at 2492 n. 2. Defendant also seeks pursuant to Rule 12(f) to have this Court strike a statement made in section (2) of the "Wherefore" clause of Count II relating to the amount of punitive damages that plaintiff thinks he should be awarded if defendant is found liability under Count II. *See* complaint at 14–15.

### A. Count I

Defendant argues that plaintiff has an adequate remedy at law and so injunctive relief is inappropriate under Count I. Plaintiff responds that he does not have an adequate remedy of law and so his request for injunctive relief is appropriate. This debate is more than a matter of legal semantics, as not only does the legal versus equitable classification of the cause of action asserted by plaintiff determine the type of relief available, it may also determine whether the claim by plaintiff should be ultimately determined by a jury or a non-jury trial.[2]

■ Under Pennsylvania law,[3] "equitable relief is not appropriate where a party has an adequate legal or statutory remedy." *Tudor Dev. Group v. U.S. Fidelity & Guaranty Co.,* 968 F.2d 357, 364 (3d Cir.1992) (citing *Clark v. Pennsylvania State Police,* 496 Pa. 310, 436 A.2d 1383, 1385 (1981)). The legal remedy must be both adequate and

2. While the parties have briefed the issue of whether the Seventh Amendment requires Count I in its current form to be dismissed because defendant has a right to a jury trial on this claim, it is unnecessary to reach this constitutional issue as this Court concludes for other reasons that Count I in its current form should be dismissed.

3. The Court agrees with the parties that Pennsylvania law applies to this case as it is undisputed that plaintiff is a resident of Pennsylvania and that the relevant policies were issued to plaintiff in Pennsylvania; in other words Pennsylvania is the state with the most contacts with this case and with the most interest in having its law apply

to this case. *See Compagnie des Bauxites de Guinee v. Argonaut–Midwest Ins. Co.,* 880 F.2d 685, 688–89 & n. 9 (3d Cir.1989) (noting that in the context of claims based upon a contract such as an insurance policy Pennsylvania applies a choice of law methodology which combines contacts analysis and interest analysis); *Hughes v. Prudential Lines, Inc.,* 425 Pa.Super. 262, 624 A.2d 1063, 1066 n. 2 (noting that in the context of claims based upon insurance policies Pennsylvania courts generally choose to apply the law of the state where the insured resides and the policy was issued), *appeal denied,* 535 Pa. 647, 633 A.2d 152 (1993).

complete; equitable relief is available "despite the existence of a legal remedy when, from the nature and complications of a given case, justice can best be reached by means of equity's flexible machinery." *Hill v. Nationwide Ins. Co.*, 391 Pa.Super. 184, 570 A.2d 574, 576 (citation omitted), *appeal denied,* 525 Pa. 647, 581 A.2d 573 (1990). "A plaintiff has no adequate remedy at law if the injury is of a repeated or continuing character or where monetary damages are difficult to ascertain or are inadequate." *Louis W. Epstein Family Partnership v. Kmart Corp.*, 828 F.Supp. 328, 337 (E.D.Pa.1993); *see also Stuart v. Gimbel Brothers, Inc.*, 285 Pa. 102, 131 A. 728, 730 (1926) (holding that an injunction may issue "to prevent wrongs of a repeated and continuing character, or which occasion damages which are estimable only by conjecture and not by any accurate standard"). But equitable relief remains an "extraordinary remedy," [4] and so is not available if the improper future actions that are sought to be enjoined are merely speculative. *See Philadelphia Ass'n of School Administrators v. School Dist.*, 80 Pa.Cmwlth. 242, 471 A.2d 581, 584 (1984).

Plaintiff argues that the instant case is a classic situation for the provision of equitable relief. While acknowledging that he has an adequate remedy at law for obtaining the past benefits allegedly owed to him, plaintiff argues that no action at law could prevent defendant from denying plaintiff future benefits after a verdict is rendered in this Court. Such a denial would then require plaintiff to file another lawsuit, thus raising the specter of plaintiff being forced to file lawsuit after lawsuit in order to enforce his rights under the policies.

In support of this argument, plaintiff relies on two lines of cases. First, plaintiff correctly notes that the Court of Appeals for the Third Circuit and other courts of appeals have held that equitable relief is available in the context of insurance coverage claims made pursuant to section 502(a)(3)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3)(B). *See*

*In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig.*, 57 F.3d 1255, 1269 (3d Cir. 1995), *cert. denied sub nom. Unisys Corp. v. Pickering,* —— U.S. ——, 116 S.Ct. 1316, 134 L.Ed.2d 470 (1996); *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir.1994); *Howe v. Varity Corp.*, 36 F.3d 746, 754–55 (8th Cir.), *opinion clarified by* 41 F.3d 1263 (8th Cir.1994), *aff'd,* —— U.S. ——, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 993 (7th Cir.1993). But these cases relied on the specific provisions of ERISA and did not discuss the availability of equitable relief generally. *See Unisys Corp.*, 57 F.3d at 1267–69; *Curcio,* 33 F.3d at 235; *Howe,* 36 F.3d at 754–55; *Anweiler,* 3 F.3d at 993. As the claim asserted in Count I here is not based on a statutory scheme which explicitly provides for equitable relief, the reliance by plaintiff on these cases is misplaced.

Second, plaintiff relies on three Pennsylvania state court decisions where equitable relief was allowed in the context of claim based upon the alleged violation of an agreement to make certain payments. *See Hill,* 570 A.2d 574; *Brown v. Hall,* 495 Pa. 635, 435 A.2d 859 (1981); *Silvestri v. Slatowski,* 423 Pa. 498, 224 A.2d 212 (1966). Turning first to *Brown* and *Silvestri,* both of these cases are readily distinguishable from the instant situation because they were both decided in the context of agreements arising out of divorces, and the Supreme Court of Pennsylvania specifically noted and relied upon the fact that there is long history in Pennsylvania and elsewhere of allowing equitable relief in actions to enforce such agreements. *See Brown,* 435 A.2d at 861; *Silvestri,* 224 A.2d at 215. Plaintiff has failed to present and this Court has not found, however, any such history in the context of actions involving disability insurance policies; indeed the history that exists indicates that relief involving the payment of future benefits has generally not been allowed in this context. *See, e.g., New York Life Ins. Co. v. Viglas,* 297 U.S.

---

4. *See American Telephone & Telegraph Co. v. Winback and Conserve Program, Inc.,* 42 F.3d 1421, 1426–27 (3d Cir.1994) (holding that the grant of injunctive relief is an extraordinary remedy which should only be granted in limited circumstances), *cert. denied,* —— U.S. ——, 115 S.Ct. 1838, 131 L.Ed.2d 757 (1995).

672, 56 S.Ct. 615, 80 L.Ed. 971 (1936) (limiting damages based upon the improper denial of benefits under a disability insurance policy to the benefits that were due when the suit was begun except in cases where there was a complete repudiation of the policy); *Trainor v. Mutual Life Ins. Co.*, 131 F.2d 895, 897 (7th Cir.1942) (same); *Sokolsky v. Occidental Ins. Co.*, 481 F.Supp. 36 (W.D.Pa.1979) (applying Pennsylvania law and holding that a plaintiff could not obtain an injunction relating to future benefits under a disability insurance policy as the only relief legally available was the benefits owed at the time that the suit was filed); *see also Gray v. Occidental Life Ins. Co.*, 387 F.2d 935 (3d Cir.1968) (holding that possible future benefits under a disability insurance policy are not be considered in determining the amount in controversy for diversity jurisdiction purposes); *Bree v. Mutual Benefit Health and Accident Ass'n*, 182 F.Supp. 181, 183 (E.D.Pa.1959) (same). In addition, the Supreme Court of Pennsylvania also relied in both *Brown* and *Silvestri* on the fact that the payments owed under the agreements were clear and unchangeable. *See Brown*, 435 A.2d at 861; *Silvestri*, 224 A.2d at 215. Here in contrast, while the amounts of the payments owed are fixed by the insurance policies at issue here, the payments are changeable given that plaintiff could cease being disabled at some time in the future and thus cease to be eligible for payments under the policies. *See, e.g.,* complaint ¶ 26 (alleging that a medical specialist retained by plaintiff, Dr. Joseph DiGiacomo, was of the opinion that "the prognosis for recovery and return to work as a trial lawyer is poor" but not alleging that this specialist completely ruled out such a recovery), Exhibits A at 5 (stating that the benefits will continue "while a period of Total Disability continues"), B at 5 (same), C at 6 (same). As a result, the reliance by plaintiff on *Brown* and *Silvestri* is misplaced.

The *Hill* case is closer to the facts presented here. In *Hill*, the Pennsylvania Superior Court held that person suing for ongoing payment of medical benefits under the Motor Vehicle Financial Responsibility Law, 75 Pa. Cons.Stat.Ann. §§ 1701–1799.7 ("MVFRL"), could properly receive equitable relief. *See Hill*, 570 A.2d 574. The majority found that

the plaintiff faced the possibility of having the insurer deny future claims for medical benefits and so concluded that equitable relief was appropriate in order to insure that the defendant continued to make prompt payments for reasonable and necessary medical services. *Hill*, 570 A.2d at 578.

When the highest court of a state has not ruled on an issue of state law, as is the case here, a federal court is required to predict how that court would rule. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967). In making this prediction, a federal court should consider a range of information, including "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). While the decisions of intermediate courts are but one datum to consider, they are "indicia of how the state's highest court might decide the issue." *McGowan v. University of Scranton*, 759 F.2d 287, 291 (3d Cir.1985) (citation omitted). They should therefore only be disregarded if the federal court is "convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. A.T. & T. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). But despite the factual similarities between *Hill* and the instant case, this Court concludes that there are several persuasive reasons for predicting that the Supreme Court of Pennsylvania would not apply the reasoning of the majority in *Hill* to the instant action.

First, the *Hill* decision was not unanimous and this Court finds the reasoning of the dissenting judge, Judge Wieand, to be more in conformity with the general Pennsylvania law relating to the availability of equitable relief than the reasoning of the majority. In *Hill*, as Judge Wieand noted in his dissent, the majority assumed without evidence that the plaintiff faced a significant threat that the defendant would improperly

refuse to make future payments for medical services. *See Hill,* 570 A.2d at 578, 581–82 (Wieand, J., dissenting). But such an assumption is an improper basis for granting equitable relief, as in order for equitable relief to be granted the improper future action must be more than speculative. *See School Administrators,* 471 A.2d at 584; 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2942, at 45, 47 (1995). Both in *Hill* and the instant case there is no basis for believing that the defendant would improperly deny the payment of benefits in the future if the defendant had judgement entered against it in this case with regard to past benefits. Second, as also noted by Judge Wieand in his dissent, there are judicial efficiency grounds for refusing to generally grant equitable relief in this context which this Court concludes would also have persuasive weight with the Supreme Court of Pennsylvania. Specifically, the kind of relief granted in *Hill* and requested here would involve the courts in ongoing claims management of insurance policies, as the courts would have to deal with presumably regular requests from insurers to reevaluate the alleged disability of plaintiffs in order to determine whether benefits are still owed under the disability policies at issue. *See Hill,* 570 A.2d at 582 (Wieand, J., dissenting). Third, the *Hill* decision was made in the context of the MVFRL, a statutory scheme regulating coverage and the payment of benefits under auto insurance policies, while the instant case involves a purely private dispute in which no such statutory scheme is implicated. And finally, this Court concludes that the Supreme Court of Pennsylvania would also reject the position adopted by plaintiff here in light of the relatively long legal history of denying claims for future benefits under disability insurance policies absent complete repudiation. *See* cases cited *supra* p. 306.

Plaintiff argues, however, that the his allegations about the bad faith conduct of defendant support an inference that defendant would be likely to improperly deny benefits in the future. Plaintiff points specifically to his allegations relating to the rejection by defendant of the various reports submitted not only by his treating physicians but also by an expert in the field of cardiology and psychiatry, the reliance by defendant on a single report generated by its own doctor prior to the apparent heart attack suffered by plaintiff, and the financial pressures on defendant to avoid making payments under policies of this type. *See* complaint ¶¶ 25–26, 42–44. But while these allegations on their face support the claim by plaintiff that the past denials by defendant were done improperly and in bad faith, they do not show that once a judgment has been entered against it defendant will continue to improperly deny the benefits owed to plaintiff, especially in the face of possible punitive damages.[5] Plaintiff has made no allegations, for example, that with regard to other insureds defendant has engaged in the kind of repetitive denials and litigation which plaintiff argues could happen here, and plaintiff does not allege that he personally has had to bring any previous suits to enforce his rights under the specific insurance policies at issue here. This Court concludes, therefore, that plaintiff has failed to make sufficient allegations to support, even taking all inferences in his favor, his request for equitable relief.

This Court concludes, therefore, that plaintiff has an adequate remedy at law and so cannot pursue his claim in equity.[6] As a result, the motion by defendants to dismiss Count I will be granted but without prejudice

---

5. If plaintiff prevails with regard to past benefits, that holding could presumably be used as evidence that defendant acted in bad faith in denying future benefits, and under Pennsylvania law bad faith actions on the part of an insurer can result in the award not only of additional interest on the benefits improperly denied but also of punitive damages and attorney costs and fees. *See* 42 Pa.Cons.Stat.Ann. § 8371.

6. It should also be noted that with regard to request by plaintiff for an injunction barring defendant from demanding monthly statements of claim and physician's statements, plaintiff can be relieved from the requirement of submitting such monthly statements by asking this Court for a declaration pursuant to the Declaratory Judgment Act that such monthly statements are not required under the terms of the policies. *See* 28 U.S.C. §§ 2201–2202. As a result, equitable relief is not required to adequately and completely address this concern asserted by plaintiff.

to plaintiff filing an amended complaint containing a reformulated Count I stating a claim at law.

### B. Count II

■ In Count II, plaintiff has requested *inter alia* the following damages:

(2) Award punitive damages in an amount to be determined by the trier of fact to be fair, appropriate, just and sufficient to deter defendant from engaging in such bad faith conduct in the future (suggested to be ten (10) times the full actuarial valuation of the lifetime benefits).

Complaint at 14–15. Defendant argues that the ending parenthetical should be stricken as a violation of Local Rule of Civil Procedure 5.1.1 of the United States District Court for the Eastern District of Pennsylvania ("Local Rule 5.1.1"). Plaintiff responds that the parenthetical is proper under both the Federal Rules of Civil Procedure and the Local Rules of this Court.

Local Rule 5.1.1 provides that:

No pleading asserting a claim for unliquidated damages shall contain any allegation as to the specific dollar amount claimed, but such pleadings shall contain allegations sufficient to establish the jurisdiction of the Court, to reveal whether the case is or is not subject to arbitration under Local Civil Rule 53.2, and to specify the nature of the damages claimed (*e.g.*, "compensatory," "punitive," or both).

Applying this local rule, courts in this district have consistently rejected attempts by plaintiff to state either specific dollar amounts for unliquidated damages or to provide formulas for determining such amounts. *See, e.g., Christian v. Loblaw Brands Ltd.*, Civil Action No. 95–1823, 1995 WL 612886, at *2 (E.D.Pa. Oct. 13, 1995) (striking requests for damages amounts of $1.5 million, $45,000, $60,000, $100,000 and $2.5 million); *Zanayed v. Perkiomen Valley School Dist.*, Civil Action No. 93–5604, 1994 WL 52760, at *5 (E.D.Pa. Feb. 23, 1994) (striking $700,000 and $6 million ad damnum clauses); *Schachter by Schachter v. Moss Rehabilitation Hosp.*, 695 F.Supp. 186, 190 (E.D.Pa.1988) (striking $20 million ad damnum clause); *Asbestemps, Inc. v. Diversified Energy Group,*

*Inc.*, Civil Action No. 87–2623, 1987 WL 16662, at *2 (E.D.Pa. Sept. 9, 1987) (striking formula for calculating punitive damages even though it did not provide a specific dollar amount). The reliance by plaintiff on the Federal Rules of Civil Procedure and cases from other districts is misplaced, as the question here is whether a local rule promulgated in this district requires that the passage cited by defendant be stricken. *See R.S.E., Inc. v. Pennsy Supply, Inc.*, 77 F.R.D. 702, 703 (M.D.Pa.1977) (rejecting argument that predecessor of the local rule at issue here was inconsistent with the Federal Rules of Civil Procedure). In light of the plain language of Local Rule 5.1.1 and the holdings of other courts in this district that have applied this local rule, this Court concludes that this parenthetical must be stricken. The motion by defendant to strike this portion of Count II will therefore be granted.

### III. CONCLUSION

For the foregoing reasons, the motion by defendants to dismiss Count I of the complaint and to strike a portion of Count II of the complaint will be granted.

An appropriate Order follows.

### *ORDER*

**AND NOW,** this 14th day of August, 1996, upon consideration of the motion by defendant to dismiss Count I of the complaint and to strike a portion of Count II of the complaint (Document No. 9), the response by plaintiff thereto, the reply of defendant thereto, and the sur-reply by plaintiff thereto, for the reasons stated in the attached memorandum, it is hereby **ORDERED** that the motion is **GRANTED. IT IS FURTHER ORDERED** that:

1. Count I of the complaint is **DISMISSED** but **WITHOUT PREJUDICE** to plaintiff filing an amended complaint restating Count I as a claim at law as opposed to in equity;

2. The following language, "(suggested to be ten (10) times the full actuarial value of the lifetime benefits)," contained in section (2) of the "Wherefore" clause

of Count II of the complaint is **STRICKEN;** and

3. Plaintiff may file an amended complaint, as permitted by the aforesaid, **no later than September 3, 1996.**